RICAUD ET AL. *v.* AMERICAN METAL COMPANY, LIMITED.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 119.   Submitted January 3, 1918.—Decided March 11, 1918.

The requirement that a certificate from the Circuit Court of Appeals shall contain a "proper statement of the facts on which the questions and propositions of law arise," (Rule 37) is not complied with by a statement of what is "alleged and denied" by the parties in their pleadings, supplemented by a statement that there was evidence tending to establish the facts as claimed by each party; nor should the questions be based upon an "assumed" statement of facts.

Facts supplied by judicial notice may enable the court to answer questions from the Court of Appeals, where otherwise the insufficiency of the certificate would necessitate its return to that court.

A bill in the District Court for the Western District of Texas, besides showing diverse citizenship, alleged that certain personal property of the plaintiff had been forcibly taken from its possession in Mexico by unknown persons, was consigned to one of the defendants at El Paso, and was in a bonded warehouse there in the possession of another defendant, as Collector of Customs, who, unless restrained as prayed, would deliver it to the other defendants. *Held*, that the case, as thus stated, was within the jurisdiction of the District Court, and that the facts, not mentioned in the bill, that the property had been seized, condemned and sold for war purposes by the Constitutionalist forces in revolution in Mexico, acting under authority of General Carranza, whose government was later recognized by the United States, did not deprive the courts of jurisdiction to adjudicate upon the validity of the title thus acquired, though in exercising the jurisdiction the action of the Mexican authorities must necessarily be accepted as a rule of decision. *Oetjen* v. *Central Leather Co.*, *ante*, 297.

The fact that property seized and sold by the authorities of a foreign government belonged to an American citizen, not residing in the foreign country at the time, does not empower a court of this country to reëxamine and modify their action.

THE case is stated in the opinion.

*Mr. F. E. Hunter* and *Mr. R. B. Redic* for Ricaud *et al.*

*Mr. R. C. Walshe, Mr. U. S. Goen, Mr. Julius Goldman* and *Mr. Julian B. Beaty* for American Metal Co., Ltd.

*Mr. Charles D. Hayt, Mr. Clyde C. Dawson* and *Mr. Fred R. Wright,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE CLARKE delivered the opinion of the court.

In this suit in equity, commenced in the United States District Court for the Western District of Texas, the plaintiff in that court claims to be the owner of and entitled to a large consignment of lead bullion held in bond by the

Collector of Customs at El Paso, Texas. An injunction was granted restraining the Collector until further order from delivering the bullion to either of the other defendants.

Barlow, one of the defendants in the District Court, claims to be the owner of the property by purchase from the defendant Ricaud, who it is claimed purchased it from General Pereyra, who in the year 1913 was the commander of a brigade of the Constitutionalist Army of Mexico of which Venustiano Carranza was then First Chief.

It is not seriously disputed that General Pereyra, in his capacity as a commanding officer, in September, 1913, demanded this bullion from the Penoles Mining Company, a Mexican corporation doing business at Bermejillo, Mexico; that when it was delivered to him he gave a receipt which contains a promise to pay for it "on the triumph of the revolution or the establishment of a legal government"; that Pereyra sold the bullion to defendant Ricaud, who sold it to the defendant Barlow; that the proceeds of the sale were devoted to the purchase of arms, ammunition, food and clothing for Pereyra's troops, and that Pereyra in the transaction represented and acted for the Government of General Carranza, which has since been recognized by the United States Government as the *de jure* Government of Mexico.

The plaintiff, appellee here, claims to have purchased the bullion from the Penoles Mining Company in June, 1913.

The District Court rendered a decree in favor of the plaintiff from which defendants appealed to the Circuit Court of Appeals for the Fifth Circuit, and that court certifies three questions as to which it desires the instruction of this court.

The sufficiency of the certificate of the Circuit Court of Appeals is challenged at the threshold.

There is no denying that there is much of merit in the objection to the form of this certificate, including the form of the questions, for the reason that the certificate, instead of containing a "proper statement of the facts on which the questions and propositions of law arise," as is required by Rule 37 of this court, contains a statement of what is "alleged and denied" by the parties plaintiff and defendant in their pleadings, with the additional statement that there was evidence "tending to establish the facts as claimed by each party," but without any finding whatever as to what the evidence showed the facts to be, and the first question, on which the other two depend, is in terms based entirely on an "assumed" statement of facts.

If this certificate had not been supplemented by the recognition by the United States Government of the Government of Carranza, first as the *de facto,* and later as the *de jure* Government of Mexico, of which facts this court will take judicial notice, (*Jones* v. *United States,* 137 U. S. 202; *Underhill* v. *Hernandez,* 168 U. S. 250) it would be our duty to declare the certificate insufficient and to return it to the Circuit Court of Appeals without answering the questions. *Cincinnati, Hamilton & Dayton R. R. Co.* v. *McKeen,* 149 U. S. 259; *Graver* v. *Faurot,* 162 U. S. 435; *Cross* v. *Evans,* 167 U. S. 60; *Stratton's Independence* v. *Howbert,* 231 U. S. 399, 422.

But this recognition of the government under which General Pereyra was acting, as the legitimate Government of Mexico, makes the answers to the questions so certain and its effect upon the case is so clear, that, for the purpose of making an end of the litigation, we will proceed to answer the questions.

The first question is:

"I. Assuming that the bullion in suit was seized, condemned, and sold for war supplies by the Constitutionalist forces in revolution in Mexico, acting under authority

from General Carranza, claiming to be the Provisional President of the Republic of Mexico, had the District Court of the Western District of Texas, into which the said bullion had been imported from Mexico, jurisdiction to try and adjudge as to the validity of the title acquired by and through the said seizure, appropriation, and sale by the Carranza forces as against an American citizen claiming ownership of the said bullion prior to its seizure?"

There can be no doubt that the required diversity of citizenship to give the District Court jurisdiction of the case was stated in the petition for injunction. The certificate shows that it was alleged in the petition that the bullion was the property of the plaintiff and that it had been forcibly taken from its possession in Mexico by unknown persons but without any reference being made to a state of war prevailing therein at the time; that it was consigned to defendant Barlow at El Paso, Texas, and was in a bonded warehouse in the possession of the defendant Cobb, as Collector of Customs, who, unless restrained by the court, would deliver it to the other defendants.

This form of petition brought the case within the jurisdiction of the District Court (*United States* v. *Arredondo*, 6 Pet. 691, 709; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 632), and the question is, whether the circumstance that the bullion was seized, condemned and sold under the conditions stated in the question deprived the court of jurisdiction to go forward and adjudge as to the validity of the title acquired by the seizure and sale by the Carranza forces.

The answer which should be given to this question has been rendered not doubtful by the fact that, as we have said, the revolution inaugurated by General Carranza against General Huerta proved successful and the government established by him has been recognized by the

political department of our Government as the *de facto* and later as the *de jure* Government of Mexico, which decision binds the judges as well as all other officers and citizens of the Government. *United States* v. *Palmer*, 3 Wheat. 610; *In re Cooper*, 143 U. S. 472; *Jones* v. *United States*, 137 U. S. 202. This recognition is retroactive in effect and validates all the actions of the Carranza Government from the commencement of its existence (*Williams* v. *Bruffy*, 96 U. S. 176, 186; *Underhill* v. *Hernandez*, 168 U. S. 250, 253), and the action of General Pereyra complained of must therefore be regarded as the action, in time of civil war, of a duly commissioned general of the legitimate Government of Mexico.

It is settled that the courts will take judicial notice of such recognition, as we have here, of the Carranza Government, by the political department of our Government (*Jones* v. *United States*, 137 U. S. 202), and that the courts of one independent government will not sit in judgment on the validity of the acts of another done within its own territory (*Underhill* v. *Hernandez*, 168 U. S. 250, 253; *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347; *Oetjen* v. *Central Leather Co.*, ante, 297). This last rule, however, does not deprive the courts of jurisdiction once acquired over a case. It requires only that, when it is made to appear that the foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merit of the result cannot be questioned but must be accepted by our courts as a rule for their decision. To accept a ruling authority and to decide accordingly is not a surrender or abandonment of jurisdiction but is an exercise of it. It results that the title to the property in this case must be determined by the result of the action taken by the military authorities of Mexico and that giving effect to this rule is an exercise of jurisdiction which requires that the first question be answered in the affirmative.

The second question reads:

"II. If [the first question is answered in the affirmative,] does the subsequent recognition by the United States Government of Carranza as the legitimate President of the Republic of Mexico and his government as the only legitimate government of the Republic of Mexico deprive this court of jurisdiction on this appeal to decide and adjudge the case on its merits?"

Our answer to the first requires a negative answer to this second question.

The third question reads:

"III. If question two is answered in the negative, did the seizure, condemnation, and sale of the bullion in the manner and for the purposes stated to be assumed in question one have the effect of divesting the title to or ownership of it of a certain citizen of the United States of America not in or a resident of Mexico when such seizure and condemnation occurred?"

The answer to this question must be in the affirmative for the reasons given and upon the authorities cited in the opinion recently announced in cases Nos. 268 and 269, *Oetjen* v. *Central Leather Co.* The fact that the title to the property in controversy may have been in an American citizen, who was not in or a resident of Mexico at the time it was seized for military purposes by the legitimate Government of Mexico, does not affect the rule of law that the act within its own boundaries of one sovereign State cannot become the subject of reëxamination and modification in the courts of another. Such action, when shown to have been taken, becomes, as we have said, a rule of decision for the courts of this country. Whatever rights such an American citizen may have can be asserted only through the courts of Mexico or through the political departments of our Government. The first and third questions will be answered in the affirmative and the second in the negative.

*And it is so ordered.*