## DAY–GORMLEY LEATHER CO. v. NATIONAL CITY BANK OF NEW YORK.

District Court, S. D. New York.
Oct. 25, 1934.

504

Borris M. Komar, of New York City, for plaintiff.

Shearman & Sterling, of New York City (Carl A. Mead, of New York City, of counsel), for defendant.

CAFFEY, District Judge.

I regret that there has not been earlier opportunity to take up this case since the briefs were submitted in May. Even now lack of time prevents me from treating the matter thoroughly or commenting extensively on the authorities.

At the oral argument in April the plaintiff withdrew its objection to the thirteenth defense and the defendant withdrew the fifth, the sixth, and the seventh defenses. We are concerned, therefore, merely with the sufficiency of the first to the fourth, the eighth, the ninth, the eleventh, and the twelfth defenses. In the view I take, as well apparently as in the view of counsel, the eleventh is the most important. So I shall examine it first.

In testing the sufficiency of a defense, only allegations of facts, either in the complaint or in the defense, which are well pleaded are to be taken as true. Moreover, any material portion of the defense which constitutes a denial of an allegation of the complaint must be discarded.

Looking at the pleadings in the way indicated, the complaint divides itself into two branches. One bases the cause of action asserted exclusively on an obligation undertaken by the Petrograd branch itself; the other (paragraphs 7 and 8 of the complaint), on an assumption of liability by the defendant regardless of what was undertaken by the branch alone. The former will be dealt with in the beginning as if the latter (dealt with later) had not been included in the complaint.

The complaint alleges, in substance, that one term of the deposit contract between the plaintiff and the Petrograd branch was that the branch agreed to repay in Russia, in Russian currency, on demand (paragraph 6); that a revolution occurred November 7, 1917 (paragraph 10); that by reason thereof the branch was closed March 9, 1918, thereupon performance of the terms and conditions of the contract became impossible, among the phases of impossibility was inability of the plaintiff to demand or to receive payment of its deposit in Russia from the branch and the impossibility of performance still continues (paragraph 11); and that on October 24, 1933, the plaintiff made demand on the defendant in New York City for repayment of the deposit (paragraph 14).

In the eleventh defense, allegations of facts which do not deny allegations of facts in the complaint, in substance, are these: All the transactions between the plaintiff and the Petrograd branch took place in Russia (paragraph I); the deposit agreement provided that it should be performed in Russia and be governed by Russian law (paragraph IX); under Russian law, with respect to stoppage of defendant's operations in Russia, the branch was subject to that law and to the decisions of the Russian government (paragraph II); in November, 1917, the Soviet government decreed a nationalization of all private joint-stock banks operating in Russia and, in carrying out the decree, the Soviet government seized such banks and further decreed that all the liabilities of any private bank so seized were taken over by the State Bank acting for the Soviet government (paragraph V); the Soviet government also decreed that the liability of the Petrograd branch to its depositors was taken over and

assumed by the Soviet government acting through the State Bank (paragraph VI); all deposit accounts were confiscated by the Soviet government and credited on the books of the State Bank (paragraph VIII); the Soviet government has now been recognized by the United States government (paragraph XI).

In detail in paragraph VIII, among other things, it is alleged as follows: "By the decrees and regulations of the Soviet Government, the deposit account, if any, referred to in the complaint, was seized and confiscated by the Soviet Government and thereupon became its property; and all right, title and interest of the plaintiff therein and thereto, as against the defendant, became divested."

■ I have puzzled somewhat as to the meaning of this particular statement by the defendant. At first I was inclined to treat it as a conclusion merely and, therefore, not a well-pleaded allegation of facts which, for the purpose of passing on the eleventh defense, I may take as admitted by the plaintiff. After studying it, however, I have concluded that, when taken in conjunction with the other allegations of the defense, fairness to the pleader requires that I regard it as asserting that in the decrees and regulations of the Soviet government there was a provision which, in terms and effect, confiscated the deposit account here involved and transferred the account to itself. It is upon this interpretation of the defense that I proceed in disposing of the question relating to it. I should make clear, however, that if at the trial the defendant fails in its evidence to establish that the Soviet government issued such a decree or decrees or such a regulation or regulations as I understand the defendant to say it did, then, by the same token, I am not to be deemed by the trial judge to have passed on a defense based on different proof.

From the angle heretofore stated, in order to determine whether the eleventh defense is good, three things will be taken as uncontroverted: (1) All the pertinent transactions between the plaintiff and the defendant occurred in Russia and, according to its laws, were governed thereby. (2) Through the action of a revolutionary government in that country, such government endeavored to confiscate, and if its action was valid did confiscate, the property rights of the plaintiff in the deposit and divested the plaintiff of all interest therein. (3) Subsequent to the attempted or purported confiscation the government of the United States granted full diplomatic recognition to that revolutionary government (the documents covering which are set out in State of Russia v. National City Bank of New York (C. C. A.) 69 F.(2d) 44).

■ In the light of the circumstances as I have recited them, I think: First, that if the action by the Soviet government be valid, then the plaintiff has no title to the cause of action sued on; and, secondly, that, irrespective of original invalidity, if it existed, diplomatic recognition by this country of that government has validated the seizure of the deposit (Underhill v. Hernandez, 168 U. S. 250, 18 S. Ct. 83, 42 L. Ed. 456; Oetjen v. Central Leather Co., 246 U. S. 297, 38 S. Ct. 309, 62 L. Ed. 726; Ricaud v. American Metal Co., 246 U. S. 304, 38 S. Ct. 312, 62 L. Ed. 733).

In an oral opinion, on June 5, 1931, in Banque de France v. Chase National Bank, L. 42/63, and Same v. Equitable Trust Company of New York, L. 42/64, I indicated the reasons, largely applicable here, which influenced me to accept the interpretation which I am putting on the Supreme Court decisions cited. A copy of this, in the form of an extract from the stenographic minutes of the trial of those cases, page 4800 et seq., is on file in the clerk's office.

■ The instance would probably be rare in which the sensibilities of outsiders would not be aroused by accounts given by sufferers from a revolution. In the case at bar, however, upon the undisputed allegations, it seems to me that both the depositor and the bank were victims. The problem is to determine upon which, as between the victims, the law imposes the loss resulting from the catastrophe. So also, as I feel, the solution depends upon international law and, aside from that law, no differentiation can be made between a cause of action, in favor of one victim against the other, for breach of contract and for a tort. It is upon this account that I do not go into the state court decisions. I am bound by the rule laid down by the Supreme Court of the United States as to what is the relevant international law and what is its effect in application. Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter (C. C. A.) 32 F.(2d) 195, 200.

■ This brings us to the consideration of paragraphs 7 and 8 of the complaint. These will be taken to mean, in substance, that the defendant, as one of the terms of the deposit agreement, subjected all its assets to responsibility for the discharge of any liability (such as for the deposit with which we are here con-

cerned) incurred by its Petrograd branch. That, however, as it seems to me, does not help the plaintiff if the conclusion I have reached as to the effect of diplomatic recognition of the Soviet government be correct. This is so because, as I view the matter, the action of the Soviet government (which diplomatic recognition has rendered lawful and binding as between the parties to this action) completely destroyed the plaintiff's ownership of the deposit account and remitted the plaintiff solely to such remedy, if any, as was provided by the Soviet government itself under its decrees and regulations on the subject, described in the eleventh defense, or otherwise.

As I see it, it makes not the slightest difference that the plaintiff and the defendant are or at the time of the transactions were American corporations. With respect to the transactions both voluntarily had gone into Russia and subjected themselves to Russian law. In consequence, their rights inter sese are, to the extent I have stated, subject to what happened in Russia bearing upon those rights, regardless of the circumstance that the present litigation is in a court of the United States and regardless of how this court may feel as to what are the equities as between the parties. For this court to employ to any other end the judicial power with which it is vested would, as I conceive, be a trespass upon the functions of the political branch of the government of the United States.

Upon the facts alleged in the first and second defenses, let it be assumed that the deposit contract was subject to Russian law and that, under that law, the defendant was excused from performance in Russia (paragraphs III and VI of the first defense). Yet I think that a proper interpretation of paragraphs 7 and 8 of the complaint makes both defenses bad. As I construe those paragraphs of the complaint, it was a part of the deposit agreement that the defendant subjected all its assets to liability for a breach of the agreement. The agreement was breached and thereupon, as I see it, the assets of the defendant outside of Russia, by express terms of the agreement, became available for the satisfaction of the damages which plaintiff suffered by the breach. It would be substituting shadow for substance if the agreement were held to mean that, in these circumstances, there could be no recovery by the plaintiff in a court, outside of Russia, having jurisdiction of the parties.

Even though the deposit agreement permitted the defendant at any time to repay the plaintiff, as alleged in paragraph I of the third defense, nevertheless the defendant does not allege that there was any repayment or even that the rubles owing were tendered to the plaintiff. It seems to me manifest that mere notice, given by the defendant to the plaintiff, to withdraw its deposit did not alter the contract rights of the plaintiff or transfer to the shoulders of the plaintiff any risk flowing from failure to comply with the notice. Accordingly, I think the third defense is bad.

Restriction by Russian law, at the time of the deposit agreement or since, on exportation of rubles or restriction by law of the United States, until 1920, on making payments in this country on account of bank deposits in Russia may or may not affect the measure of recovery by the plaintiff if successful in the present suit. See Zimmerman v. Hicks (C. C. A.) 7 F.(2d) 443; Tillman v. Russo Asiatic Bank, 51 F.(2d) 1023, 80 A. L. R. 1368. In determining whether the complaint states a cause of action, however, we are not concerned with the measure of damages and I leave, as I think I should leave, the question as to what the measure should be for decision at the trial, without being prejudiced (under the law of the case rule) by anything said in this memorandum. Obviously, as I believe, a mere showing that a plaintiff is not entitled to recover as much as he seeks is not a defense, either complete or partial. The fourth defense, therefore, is not good.

The eighth and ninth defenses seem to me bad because—even though bringing the action be not, in and of itself, a sufficient demand, a point which I do not decide—the complaint alleges (paragraph 14) an express demand on the defendant in October, 1933, to repay the rubles sued for. It follows that a provision in the deposit agreement under Russian law that demand should precede suit, as alleged in the eighth defense, does not stand in the way of a recovery by the plaintiff. Whether the measure of recovery be affected by delay in the demand is not a question for present determination, but should be determined only at the trial.

Likewise, as I see it, mere writing off by the Russian government of plaintiff's claim as worthless, because of the depreciation of rubles in which the claim was payable, as alleged in the twelfth defense, could not affect the contract rights as between the plaintiff and the defendant.

Counsel have furnished me elaborate briefs for both sides in Dougherty v. Nation-

al City Bank, Supreme Court, Nassau County, pending before Harrison Tweed, Esq., referee. From an examination of those briefs I am impressed that the issues of fact in this case may be so extensive and complicated that they ought not in the first instance to be submitted to a jury. Accordingly, I suggest that counsel consider whether or not, on their application, those issues should not be sent, in advance of trial—or at the trial the court may not, of its own motion, send them—to an auditor for findings which shall have the effect of prima facie evidence, in accordance with the practice approved in Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919.

Motion to strike out the first, second, third, fourth, eighth, ninth, and twelfth defenses granted and to strike out the eleventh defense denied, with leave to the defendant, within twenty days after service of the order hereon, to amend any of the defenses stricken out and, if desired, to amend the 11th defense in the light of this memorandum.

Settle order on two days' notice.