**UNITED STATES ex rel. STEINVORTH v. WATKINS, District Director of Immigration, etc.**

No. 123, Docket 20408.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1947.

George C. Dix and David S. Kumble, both of New York City, for relator-appellant.

John F. X. McGohey, U. S. Atty., of New York City (Stanley H. Lowell, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appeal is from the dismissal by the District Court for the Southern District of New York of a writ of habeas corpus issued on the application of Ricardo Steinvorth who was born at San Jose, Costa Rica, of parents who were both German citizens there residing. The appellant was arrested by Costa Rican officers on September 24, 1944; was brought to this country by our authorities in collaboration with Costa Rican officials; and was here interned as an enemy alien at Fort Lincoln Internment Camp in 1944. He is now held, under an order for his internment, at Ellis Island, N. Y., by the appellee who is the District Director of Immigration and Naturalization for the District of New York.

The only justification for the restraint of the appellant relied on by the appellee is § 21 of Title 50 U.S.C.A. and presidential action thereunder. The statute authorizes the President, after public proclamation of the event, whenever any foreign nation or government makes, or threatens to make, war upon this country to direct the conduct to be observed towards "all natives, citizens, denizens, or subjects of the hostile nation or government, being of the age of fourteen years and upward, who shall be within the United States and not actually naturalized, * * *." It also authorizes him to have them apprehended, restrained, secured and removed as alien enemies, the removal being permitted only after they have refused or neglected to depart.

Whether this appellant is lawfully restrained by virtue of the above statute depends upon whether he is, as claimed by the appellee and held by the court below, a citizen of Germany.

The additional pertinent facts are that he lived in Costa Rica until 1901 when his parents took him to Germany where he lived until he was drafted into the German armed forces in 1916. He served therein, part of the time as a lieutenant in the German navy, until December 1918. Thereafter he lived in Germany until 1920 when he emigrated to Costa Rica where he continued to reside until he was brought to this country for internment as above stated. He is married to a Costa Rican who with their two children now resides there. In 1924, 1928 and 1932, he visited Germany on a German passport.

On July 14, 1941, after informing the German consul that he was about to do so in order to become a Costa Rican citizen, he opted for Costa Rican citizenship. In accordance with Art. I of the Costa Rican law of May 13, 1869, "The following are Costa Ricans by origin * * * (6) The children of an alien, born in the national territory, who after completing 21 years are inscribed in the Civic Registry of their own accord * * *" When the appellant had thus exercised his option to become a citizen of Costa Rica by being inscribed in the registry on his own initiative, he not only became a citizen of that country, in compliance with its laws but, assuming he had previously acquired German citizenship, he was under German law deprived of his former German citizenship if his action were the equivalent of an application for citizenship in Costa Rica and he did not obtain the written permission of the competent German authorities to retain his German citizenship.

Section 25 of the Reich and State Citizenship Law of July 22, 1913, is applicable and provides that, "A German who neither has his domicile nor his permanent residence in Germany loses his citizenship by acquisition of a foreign citizenship, if this acquisition is the result of his application or the application of the husband or legal representative. * * *

A person does not lose his or her citizenship if he or she has obtained, prior to the acquisition of the foreign citizenship, upon his or her application, the written permission of the competent authorities of his or her home state for retaining his or her German citizenship. Prior to the granting of the permission, a German Consul should be heard."

The undisputed evidence shows that when the appellant informed the German consul that he was about to opt for citizenship in Costa Rica, he was told that he would, by so doing, lose his German citizenship. He never sought or received, so far as appears, the written permission of the competent German authorities to retain his German citizenship.

His action in opting for Costa Rican citizenship was a voluntary exercise of a legal right. In that sense it was an application for such citizenship. It indicated his own desire to become a citizen of Costa Rica, recognized as such under its laws, and, though it was also the demand of a right which could not lawfully be refused, its character as an application for the recognition of that right persisted and that deprived him of German citizenship under German law.

That was the status of the appellant until the day before he was arrested in Costa Rica. But on September 23, 1944, the President of Costa Rica, by means of a resolution promulgated by the Secretary of State in the Ministry of Foreign Affairs, did, in purported compliance with Costa Rican law, declare that the appellant had lost his Costa Rican nationality and ordered the cancellation of his inscription in the Civil Registry. The appellant now seeks to attack the validity of this presidential action and to have us hold it a nullity under Costa Rican law. Since it has been clearly shown that it was a governmental act performed within the territory of Costa Rica, we cannot sit in judgment upon its validity but we must accept it as a lawful cancellation of the appellant's Costa Rican citizenship because done by a foreign sovereign within its own country. The Claveresk, 2 Cir., 264 F. 276; Banco De Espana v. Federal Reserve Bank, 2 Cir., 114 F.2d 438;

52

Ricaud v. American Metal Co., 246 U.S. 304, 38 S.Ct. 312, 62 L.Ed. 733; Underhill v. Hernandez, 168 U.S. 250; 18 S.Ct. 83, 42 L.Ed. 456.

Yet this deprivation of his Costa Rican citizenship did not restore him to German citizenship. That could only be done by Germany itself and there is nothing whatever in the record to show, or even suggest, that anything has happened since September 23, 1944, to make him a German citizen.

■ The statute authorizes the President to bring about the detention only of "* * * all natives, citizens, denizens or subjects of the hostile nation or government * * *." The appellant is not within this class as a native or as a denizen of Costa Rica, which was, and is, a friendly government. He never was a native of Germany, the only hostile nation or government with which we are now concerned, and if he ever was a citizen, a subject or a denizen of Germany he was, and has been, within none of those designations at any time while he has been within the United States.

Consequently the justification for his present restraint claimed by the appellee under the above statute is inadequate as a matter of law and he is being illegally restrained.

Order reversed. Appellant discharged.