**VANITY FAIR MILLS, Inc., Plaintiff,**

v.

**The T. EATON CO., Limited and John David Eaton, Defendants.**

United States District Court
S. D. New York.
June 29, 1955.

Toulmin & Toulmin, Dayton, Ohio, Harry A. Toulmin, Jr., Dayton, Ohio, William H. Pavitt, Jr., Washington, D. C., of counsel, and Paul, Weiss, Rifkind, Wharton & Garrison, Martin Kleinbard, New York City, of counsel, for plaintiff.

Cadwalader, Wickersham & Taft, New York City, J. A. Swords, New York City, of counsel, for defendants.

DAWSON, District Judge.

These are motions pursuant to Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C.A. for an order dismissing the amended complaint on the grounds that—

(1) This Court lacks jurisdiction over the subject matter of the controversy;

(2) This Court lacks jurisdiction over the person of the defendant, The T. Eaton Co., Limited;

(3) This Court lacks jurisdiction over the person of the defendant, John David Eaton; and

(4) This Court is not a convenient forum for the trial and disposition of the issues involved in this controversy.

The motions, other than so much as relates to the issues of jurisdiction over the person of the defendants, raise the question primarily of whether this Court should take jurisdiction over an action between an American corporation and a Canadian corporation for the adjudication of the rights of the Canadian corporation in Canadian trademarks.

The motion papers show without dispute that plaintiff is a Pennsylvania corporation engaged in the United States in the manufacture and sale of textiles and that it is, and has been, the registered owner in the United States of the trademark "Vanity Fair", as applied to women's underwear, since April 3, 1917. Defendant, The T. Eaton Co., Limited, is a Canadian corporation engaged in the merchandising business throughout Canada and is, and has been, the registered owner in Canada of the trademark "Vanity Fair", as applied to women's underwear, since November 10, 1915. Defendant John David Eaton is a Canadian citizen, residing in Toronto, and is President of the corporate defendant. Where the word "defendant" is hereinafter used, it will refer to the corporate defendant.

The amended complaint is a lengthy one with 65 different paragraphs of allegations, some of them alleging violation of the United States Trademark Act, some of them alleging that defendant's trademark in Canada is invalid, some of them alleging acts of unfair competition in the United States, and some of them alleging unfair competition in Canada. It is impossible to segregate the allegations in the complaint that relate to issues of unfair competition and violation of American trademarks from the allegations that relate purely to Canadian trademarks for they are all inextricably woven together in the complaint.

However, the prayers for relief, which comprise 42 separate paragraphs, show that a judgment is sought to restrain the defendant not only in the United States, but also in Canada or elsewhere, from using the trademark "Vanity Fair" in the sale of feminine underwear; from representing that the trademark "Vanity Fair" on feminine underwear belongs to the defendant; from advertising the trademark "Vanity Fair" in newspapers and magazines, even though published in Canada, if they should circulate in the

United States; and from continuing the sale of feminine underwear under the trademark "Vanity Fair" in the United States, Canada or elsewhere.

The decree sought would, in effect, be a decree that the defendant, The T. Eaton Co., Limited, has no valid Canadian trademark on the name "Vanity Fair" in connection with women's underwear, for it seeks to restrain the defendant from using this trademark not alone in the United States but also in Canada. In this connection, the complaint raises issues as to whether the Canadian trademark, which was registered by the defendant, was properly registered, whether it has been abandoned, and whether the plaintiff is entitled by prior use to superior trademark rights in Canada to the name "Vanity Fair".

The complaint alleges, and the defendant does not dispute, that plaintiff first applied to the United States Patent Office for the registration of the trademark "Vanity Fair" for women's underwear on October 9, 1916, and that such trademark was registered on April 3, 1917. The complaint also alleges, and the defendant does not dispute, that plaintiff has continuously used this trademark in the United States in connection with women's underwear from that date to the present time and has, since 1919, advertised such trademark extensively in American periodicals, some of which circulate in Canada.

Defendant, in its motion papers, claims to have registered the trademark "Vanity Fair" for women's underwear in Canada on November 10, 1915 and to have used continuously this trademark in Canada from at least that date to the present time, with the exception of the period from 1945 to 1953, when such use was temporarily suspended due to economic conditions existing in Canada in the immediate post-war years. It is alleged that defendant has advertised its products under said trade-name in certain American publications and in various Canadian publications having some circulation in the United States.

Defendant further alleges that in 1919, plaintiff applied to register the trademark "Vanity Fair" in connection with "ready made underwear" with the Canadian Trademark Office, which application was denied in the light of the defendant's prior registration. It is alleged that plaintiff has sold some of its trademarked merchandise to the Robert Simpson Company, a competitor of the defendant, in Toronto, for resale by that organization in Canada, and that on defendant's discovery of this transaction, it protested to Robert Simpson Company that such sales infringed its Canadian trademark, and that company discontinued the line. Thereafter, in May of 1954, plaintiff, through Canadian counsel, claimed ownership of the trademark "Vanity Fair" in Canada and demanded that defendant cease using it in connection with women's underwear, which demand was refused by defendant, the latter asserting its superior rights to the trademark in Canada. On October 18, 1954, this action was started in the Southern District of New York.

The complaint states five causes of action so intertwined in pleading as to be inseparable one from the other, but essentially the complaint seeks a judgment:

(1) That plaintiff's rights in the trademark "Vanity Fair" are superior in Canada to those of defendant.

(2) That defendant has infringed plaintiff's United States trademark "Vanity Fair".

(3) That defendant has been guilty of unfair competition in Canada.

(4) That defendant has been guilty of unfair competition in the United States.

(5) That defendant has breached a contract.

We have, therefore, a situation where one of the fundamental issues of the complaint running through all the causes of action is the issue as to whether defendant has a valid Canadian trademark on the words "Vanity Fair", and wheth-

er the use of those words on defendant's products sold in Canada would constitute unfair competition or a violation of plaintiff's trademark.

### The Issue of Jurisdiction over the Subject Matter

It is alleged that this Court has jurisdiction over the subject matter of the action under the Trademark Laws of the United States, in particular under the 1905 Act, Tit. 15, U.S.C. § 81 and § 109, and the Lanham Trade-Mark Act of 1946, 15 U.S.C. Chap. 22; and under the International Convention for the Protection of Industrial Property, 53 Stat. 1748, 1768; and as one where there is diversity of citizenship, and the sum in controversy exceeds $3,000.

The Lanham Trade-Mark Act.

The Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1051–1127, 60 Stat. 427, provides a remedy against a person who shall "in commerce" use an imitation of a registered mark or improperly use a mark so as to cause confusion or to deceive purchasers as to the source of origin of the goods, 15 U.S.C.A. § 1114. The word "commerce" is defined in the Act, however, as meaning "all commerce which may lawfully be regulated by Congress." 15 U.S.C.A. § 1127.

Congress has no power to regulate commerce in the Dominion of Canada. Its power is derived from the Commerce Clause of the Constitution, Art. I, Sec. 8, Cl. 3, which confines the power to the regulation of commerce with foreign nations or among the several states or with Indian tribes. If the Act were to be construed to extend its regulation beyond that commerce which could be regulated by Congress under the terms of the Constitution, the result would be that the Act would be unconstitutional. See Commentary on Lanham Trade-Mark Act, 15 U.S.C.A. p. 265, following Sec. 1024, at p. 266.

■■ That Act does not give this Court jurisdiction to review the actions of Canadian authorities in granting or denying Canadian trademarks.

The 1905 Act was repealed July 5, 1946, and even it could not have regulated commerce in foreign countries.

The Convention for the Protection of Industrial Property, as amended through June 2, 1934, 53 Stat. p. 1768.

This Convention provides that the countries of the union which executed it are bound to assure nationals of the countries of the union an effective protection against unfair competition. However, the Convention provides in Article 17 that the execution of the engagements contained in the Convention shall be subordinated "insofar as necessary, to the observance of the formalities and rules established by the constitutional laws of those of the countries of the Union which are bound to enforce the same, which they undertake to do with as little delay as possible."

■■ It appears, therefore, that this Convention is not self-executing. A treaty, while it may be the law of the land, may depend upon legislation to make it effective. It is regarded in courts of justice as equivalent to the act of a legislature only when it operates of itself without the aid of any legislative provision. When the terms of the treaty import a contract that either of the parties engages to perform a particular act, "the treaty addresses itself to the political, not the judicial department; and the Legislature must execute the contract before it can become a rule for the court". Foster v. Neilson, 1829, 2 Pet. 253, 314, 7 L.Ed. 415.

■ Even if the Dominion of Canada is bound by the provisions of the Convention, this does not mean that the Courts of this Country can adjudicate the rights of citizens of Canada unless Canada has itself implemented the Convention with necessary legislation. No such legislation is alleged in the complaint.

### Diversity of Citizenship

Plaintiff urges that since defendant is subject to personal jurisdiction in this

action, the Court has the power to make a decree of the nature sought by it. It urges that actions for unfair competition and trademark infringement are transitory and that the Court, therefore, has jurisdiction, even though the unfair acts or infringements are committed outside of its territorial jurisdiction. See Nims, Unfair Competition and Trademarks, 4th Ed., Sec. 363-a; Vacuum Oil Co. v. Eagle Oil Co., C.C.D.N.J.1907, 154 F. 867, affirmed 3 Cir., 1908, 162 F. 671, certiorari denied, 1909, 214 U.S. 515, 29 S.Ct. 696, 53 L.Ed. 1063; Morris v. Alstedter, 1916, 93 Misc. 329, 156 N.Y.S. 1103, affirmed, 1916, 173 App.Div. 932, 158 N.Y.S. 1123.

However, in the present case, the decree sought goes beyond the principle laid down in the foregoing authorities. The decree sought seeks a determination of the status of a trademark registration in Canada and seeks a decree by this Court to the effect that the trademark registration granted in Canada is invalid and that the use by the defendant of the trademark in Canada would be unfair competition. This is far different from the ordinary transitory action for it seeks to have the Courts of one country invalidate a recognition of a status granted by a foreign country to a citizen of that country and effective only in that country.

Defendant, in papers submitted on this motion, alleges (and it is not denied by the plaintiff) that plaintiff sought to register the trademark "Vanity Fair" in Canada but that this registration was denied by the Canadian trademark officials because of the prior right of defendant to that mark in Canada. The decree sought would attempt to have this Court overrule the determination of the Canadian trademark officials. There is a procedure in Canada for Court review of a determination by the Canadian trademark officials; but plaintiff apparently prefers to apply to this Court rather than to exercise the right of judicial review granted under the Canadian law.

It has long been the established rule that the Courts of this country do not question, and will not examine, the validity of the acts of a foreign sovereign done within its borders. Underhill v. Hernandez, 1897, 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456; American Banana Co. v. United Fruit Co., 1909, 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826; Ricaud v. American Metal Co., 1918, 246 U.S. 304, 38 S.Ct. 312, 62 L.Ed. 733.

The principle was succinctly expressed by Judge Learned Hand in the following language:

"* * * We have repeatedly declared, for over a period of at least thirty years, that a court of the forum will not undertake to pass upon the validity under the municipal law of another state of the acts of officials of that state, purporting to act as such. * * *"

Bernstein v. Van Heyghen Freres Societe Anonyme, 2 Cir., 1947, 163 F.2d 246, 249, certiorari denied, 1947, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357.

This same principle has been applied in a case involving trademarks registered in a foreign country. In George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 1944, 142 F.2d 536, certiorari denied, 1944, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606, the Court considered the extent of a decree which could be entered in an action for trademark infringement and unfair competition where the defendant had established trademarks in certain foreign countries. The Court said, 142 F.2d at page 540:

"* * * We do not see upon what 'principles of equity' a court can enjoin the initiation of acts in the United States which constitute no wrong to the plaintiff in the country where they are to be consummated. Nor can we perceive upon what theory a plaintiff can recover damages for acts in the United States resulting in a sale of merchandise in a foreign country under a mark to which the defendant has established, over the plaintiff's opposition, a legal right of use in that country. Consequent-

ly neither the injunction nor the accounting should cover activities of the defendants, either here or abroad, concerned with sales in countries where the defendants have established rights superior to the plaintiff's in the name 'Zande'. \* \* \* "

Plaintiff urges that the decision in Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 established the right of an American company to get relief of the nature here sought even if the acts of unfair competition and trademark infringement were consummated in a foreign country by a defendant who had a trademark registered in that foreign country (Mexico). The opinion of the Supreme Court shows that prior to the determination of the case by that Court, the Mexican Courts had nullified defendant's Mexican trademark. It furthermore appears that the primary basis for the Court's decision was that defendant was an American citizen and that "Congress in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States." 344 U.S. at page 282, 73 S.Ct. at page 254. This does not mean that our Courts can project the impact of our laws so as to prescribe standards of conduct for a Canadian corporation in Canada merely because it may have a branch or a purchasing office in the United States.

■ Plaintiff, on the argument of the motion, recognized that this Court had no authority to compel the Canadian trademark authorities to change a trademark registration. It urged, however, that since the Court had personal jurisdiction over the defendant, it could order the defendant to file a cancellation of its Canadian trademark and thus accomplish the same result. This attempt to do by indirection that which a Court has no power to do directly may lead only to confusion and an unseemly conflict between the Courts of two jurisdictions.[1] In such a situation, the Court should ordinarily refuse to exercise jurisdiction to compel a defendant to perform an act in a foreign state. See Restatement, Conflict of Laws, Sec. 94, comment b, (1934).

We in this Country undoubtedly would be outraged if American companies having branches in foreign lands were faced with the possibility that the Courts of all these lands would assume jurisdiction to determine the rights of the American company in its home land to trademarks, copyrights, or patents granted or registered under the laws of the United States. To attempt to assert that

1. In United States v. Imperial Chemical Industries, D.C.S.D.N.Y.1952, 105 F. Supp. 215, this Court (Ryan, J.) was faced with the problem of entering a decree in an anti-trust action. The Court directed a British corporation to grant immunity under its foreign patents (corresponding to United States patents made subject to compulsory licensing by decree) in order that the British corporation might not assert rights of exclusion in Britain. A British company which had received an exclusive license for certain specified territories under the patents in question brought suit in England to restrain Imperial Chemical Industries from complying with the decree of this Court. British Nylon Spinners v. Imperial Chemical Industries [1953] 1 Ch. 19. The British Court restrained Imperial Chemical Industries from complying with the order of the United States Court. Thus we had the situation of an American Court directing a defendant to take certain action and a British Court enjoining it from taking that action. The opinion of the Master of the Rolls in the Court of Appeals said, in part:

"\* \* \* I certainly should be the last to indicate any lack of respect for any decision of the District Courts of the United States. But I think that in this case there is raised a somewhat serious question whether the Order, in the form that it takes, does not assert an extraterritorial jurisdiction which the Courts of this country cannot recognise, notwithstanding any such comity. Applied conversely, I conceive that the American Courts would likewise be slow (to say the least) to recognize an assertion on the part of the British Courts of jurisdiction extending (in effect) to the business affairs of persons and corporations in the United States." (p. 24)

because a Canadian company has a branch in New York, the Courts of this Country can determine its rights in Canada in Canadian trademarks registered in Canada, is equally far-fetched. Such an attempted assertion of jurisdiction might provoke justified resentment.[2]

If international trade and commerce is to expand and if nations are to live as neighbors, it is necessary that nations observe the first principle of good neighborly relations, which is: Do not try to tell your neighbor how to manage affairs in his own household.

■ . To the extent that the complaint seeks a determination of the rights of the defendant in Canadian trademarks and a determination as to whether the use of such trademarks in Canada constitutes unfair competition, the complaint states a cause of action over which this Court has no jurisdiction, or if it has jurisdiction, over which it should refuse to assume jurisdiction.

■ However, the complaint also has within it allegations which would indicate that the plaintiff is asserting claims based upon violation of American trademarks and unfair competition in this Country. To this extent, the complaint states causes of action over which this Court has jurisdiction. The allegations of the complaint are so inextricably woven together, however, that it is necessary for orderly Court proceedings that the complaint be redrawn and limited to those subjects over which the Court has jurisdiction.

It might be urged that the question of jurisdiction be left for the trial court and the framing of any decree that might be entered into it. However, this would result in protracted and expensive litigation on issues on which the Court should not assume jurisdiction. Under the circumstances, it is better that the issue of jurisdiction be determined at the outset of the litigation. See Phillips v. Baker, 9 Cir., 1941, 121 F.2d 752, certiorari denied, 1941, 314 U.S. 688, 62 S.Ct. 301, 86 L.Ed. 551; Zimmers v. Dodge Bros., D.C. N.D.Ill.1927, 21 F.2d 152.

The motion to dismiss the complaint is granted with leave to the plaintiff to file and serve an amended complaint within 60 days in consonance with this opinion.

### The Issue of Jurisdiction over the Person of the Defendant, The T. Eaton Co., Limited

The moving papers show that the defendant is a Canadian corporation which maintains, and has maintained since at least 1929, an office at 200 Madison Avenue in New York City. This New York City office has 31 employees, including 15 buyers. The quarters are used primarily as purchasing offices for the defendant but, in addition, there is a small shipping room which receives shipments of some goods which are urgently re-

2. In 1947, subpoenas were issued out of this Court to some fifty Canadian pulp and paper companies, in the course of a Sherman Act investigation, requiring them to produce records before a grand jury in New York. The Ontario Parliament believed that this was an infringement upon the sovereignty of the Province and as a result, there was passed "The Business Records Protection Act", Revised Statutes of Ontario, 1950, Chap. 44, which prohibits any person in that Province from sending from Ontario to a point outside of Ontario any books, records, or other papers in response to any "order, direction or subpoena of any legislative, administrative, or judicial authority in any jurisdiction outside of Ontario". The statement in the Ontario Parliament by the Premier of Ontario on October 27, 1947 reflected the resentment against what the Premier called an attempt by the judicial authorities of the United States "to invade the territorial integrity of Canada" by the issuance of these subpoenas requiring the production of records from Canadian companies relating to business done in Canada. He stated at the conclusion of his remarks to the legislature: "I recognize that in population Ontario is a very small jurisdiction compared with that of the United States. Nevertheless, I trust no citizen of the United States will forget that Canadians are just as proud of their own nationality and just as jealous of their own sovereignty as is any citizen of their own country."

quired, consolidates them for shipment to various stores of the defendant, and reships the consolidated parcels. The New York office makes purchases annually, running into millions of dollars. Defendant's name appears in the Manhattan telephone directory and also appears on the doors of the office at 200 Madison Avenue.

■ Defendant's activities in New York have been sufficiently substantial and continuous to make the defendant present in this District for the purposes of this action. Cf. United States v. Scophony Corp., 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091; International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

Process in the action was served on William C. Bores, who is in charge of the New York office. Defendant concedes that Bores is a "managing agent" within the meaning of the relevant statutes dealing with the service of process on a foreign corporation.

■ This Court has jurisdiction over the person of The T. Eaton Co., Limited for the purposes of this action, and the motion to dismiss the action against such defendant is denied.

### The Issue of Jurisdiction over the Person of the Defendant, John David Eaton

The amended complaint alleges that the defendant, John David Eaton, is a citizen of Canada and a resident of Toronto, Ontario; that he is the President and a substantial stockholder of the corporate defendant. It is alleged that he leased the premises at 200 Madison Avenue in his individual name, and that the lease stands in his individual name; and that he has permitted these premises to be used by the corporate defendant for the business of the corporate defendant, including the acts of unfair competition alleged in the complaint. The individual defendant was not personally served with process, but process has been allegedly served upon him by leaving it with the manager at this office.

Jurisdiction is asserted over this individual defendant under the provisions of Rule 4(d) (7) of the Rules of Civil Procedure and § 229–b of the Civil Practice Act of the State of New York. This section of the Civil Practice Act provides, in part, as follows:

"When any natural person or persons not residing in this state shall engage in business in this state, in any action against such person or persons arising out of such business, the summons may be served by leaving a copy thereof with the complaint with the person who, at the time of service, is in charge of any business in which the defendant or defendants are engaged within this state, and any summons so served shall be of the same legal force and validity as if served personally on such nonresident person or persons so engaging in business in this state within the territorial jurisdiction of the court from which the summons issues, provided that a copy of such summons and complaint together with a notice of such service upon such person in charge of such business according to the provisions of this section shall be forthwith sent to such nonresident person or persons by registered mail, return receipt requested."

■ To acquire jurisdiction under this section, it must appear that the action arises out of the business done by the nonresident individual in the State. Since, under the decision of this Court, it will be necessary for the plaintiff to file and serve a further amended complaint, it is not appropriate to determine at this time whether the Court has jurisdiction over the individual defendant. This should not be determined until after the further complaint is served so that at that time, there may be a consideration of the question as to whether, if the individual defendant does engage in business in the State of New York (concerning which no opinion is expressed), the action alleged in that further amend-

ed complaint is one which arises out of such business.

The motion to dismiss the action as to John David Eaton is denied, without prejudice to its renewal after the further amended complaint has been served and filed.

So ordered.