Hopkins, J. (concurring).
I concur wholly in the comprehensive opinion of Chief Judge Ftjld. Only because certain aspects of the case possess particular emphasis for me do I add the following.
*65 For the reasons so admirably stated by Chief Judge Fuld I do not find that the Hickenlooper Amendment controls the disposition of this case. We must then return to Banco Nacional de Cuba v. Sabbatino (376 U. S. 398) to determine whether the act of state doctrine applies. If, indeed, an act of state was committed, Sabbatino, as a statement of Federal law from which the States may not dissent (id., p. 427), obliges us to observe the rule that we may not inquire into the plaintiff’s cause, no matter how meritorious it may be.
Sabbatino did not pronounce a sweeping and compendious rule; it dealt with a taking of property by a foreign sovereign within the latter’s territory, and expressly limited its holding to the presence of these circumstances, in the absence of a pertinent treaty or agreement (p. 428). No operative treaty or agreement has been asserted by the parties to be decisive of the issues here. On the other hand, it is true that no taking of plaintiff’s property has occurred—for the same reasons which support the conclusion that the Hickenlooper Amendment does not govern the case.
The question then is whether the breach of contract which is plaintiff’s grievance constitutes an act of a sovereign within its territory. In the setting of this litigation, the defendant was an instrumentality of the sovereign, though involved in a purely commercial transaction, and, therefore, unshielded by any immunity from the jurisdiction of our courts (cf. Victory Transp. v. Comisaria General, 336 F. 2d 354, cert. den. 381 U. S. 934; Petrol Shipping Corp. v. Kingdom of Greece, 360 F. 2d 103, cert. den. 385 U. S. 931). In the issuance of the tax exemption certificates to the plaintiff’s assignor, whether accomplished during or before the Castro regime, the defendant was performing a power delegated to it, and discharging a duty cast upon it, by the Cuban Government for the advancement of Cuban interests. Quite clearly, what the defendant did vis-a-vis the plaintiff’s assignor in this case served not its concerns but the concerns of Cuba.
Moreover, the contract was made by the parties in Cuba, and the performance of the contract — the delivery of the check— was due to occur in Cuba. Indeed, the breach of the contract occurred in Cuba. At the time the'defendant refused to perform its obligation, that refusal was an act of state committed within *66 the territory of Cuba. Thus, when the plaintiff proved the breach of contract as an essential element of her case, at the same time' her proof established the commission of the act of state; and no burden rested on the defendant to do more.
The defendant did, however, do more by proving the existence of currency regulations adopted by governmental agencies to preserve the economic stability of Cuba. Those regulations prohibited the consummation of the contract. But from my view, the act of state was the defendant’s refusal to perform; the currency regulations, though equally the product of an act of state, were simply the justification for the refusal.[1] Under this analysis, whether the defendant honored its obligation under some of the tax exemption certificates after the adoption of the currency regulations becomes immaterial: the sovereign might waive the regulations on occasion, and on another occasion enforce them. However it exercised its power, the exercise remained an act of state.
Before Sabbatino a breach of contract was considered an act of state both in the Federal courts and in our courts (Hewitt v. Speyer, 250 F. 367; Holser v. Deutsche Reichsbahn-Gesellschaft, 277 N. Y. 474; Dougherty v. Equitable Life Assur. Soc., 266 N. Y. 71). In Holser, for example, the act of state rule was recognized, even though the abrogation of the contract by the defendant was based on a foreign law particularly odious and offensive to our institutions. A question of the sufficiency of plaintiff’s complaint and of a defense in the defendant’s answer was before the court. Plaintiff, a German Jew, sued on an employment contract made before the accession of Hitler with the defendant, a German corporation and an instrumentality of the German Government formed for the purpose of operating the governmental railroad system. Plaintiff alleged two causes of action, the first of which asserted that he had been discharged prior to the terminal date of the contract on the sole ground that he was a Jew. Damages for the breach of contract were demanded. In the second cause of action plaintiff alleged that he had been seized and held in a *67 concentration camp, so that he had been prevented from continuing his employment. He claimed that the contract provided that, if he were unable, without fault on his part, to serve during the period of the contract, the defendant would pay him a stipulated sum in satisfaction of its obligations. The defendant interposed a defense that under a German law enacted in 1933 persons of non-Aryan descent employed in the government and governmental corporations were required to be retired, and that the contract was, therefore, lawfully terminated.
After consideration of the complaint and the defense, upon certified questions, it was held that in the face of the defense the first cause of action could not survive, since the act of state rule intervened. ‘ ‘ Within its own territory every government is supreme (United States v. Belmont, 301 U. S. 324) and our courts are not competent to review its actions.” (Holser v. Deutsche Reichsbahn-Gesellschaft, 277 N. Y. 474, 479, supra.) As to the second cause of action the court held that questions of fact arose concerning the meaning of the German words used in the contract providing for payment of the stipulated sum and concerning the interpretation of German law to be applied to the contract. That is to say, it might be found as a fact after a trial that the contract contemplated payment of the agreed sum upon the occurrence of the very act of state which prevented plaintiff’s performance.[2]
The case before us, of course, does not present the latter contingency, for the certificates owned by Ritter contained no provision for payment of any sum in the event of a dishonor by the defendant for any reason. Thus, no question of fact, either as to an act of state or as to the meaning of the language of the contract became material here. Rather, the case resembles the fact pattern in the first cause of action alleged in Holzer, which was declared to be vulnerable under the act of state rule.
Both Holzer and Dougherty (266 N. Y. 71, supra) were cited in S abb atino as expressions of the law of New York which “ echo those of federal decisions ” (Banco Nacional de Cuba v. Sabbatino, 376 U. S. 398, 424-425, supra), which recognized the act *68 of state doctrine. To this limited degree, then, Sabbatino treated a breach of contract as an act of state. Nor is it without significance that Sabbatino enforced the doctrine even where the sovereign invoked the drastic course of confiscation, whereas we deal here with the exercise of a less extreme measure of sovereign power.
Accordingly, I think that Federal law may fairly be said to direct the application of the act of state rule, denying us a review of the merits of the case. Once " it is made to appear that the foreign government has acted in a given way on the subject-matter of the litigation, the details of such action or the merits of the result cannot be questioned but must be accepted by our courts as a rule for their decision.” (Ricaud v. American Metal Co., 246 U. S. 304,309.)

. If the defendant had been a private institution and not an instrumentality of Cuba, then the defendant would have been required to establish the act of state — the currency regulations—which prevented performance and sustained its refusal to deliver the check. But that is not the fact in this litigation. Here, in effect, the defendant was executing the will of Cuba.

. It should be observed that nothing turns on the circumstance that in Holzer the plaintiff was a German national. The act of state doctrine applies equally to an alien or a national with respect to action of the state as to local assets. (Ricaud v. American Metal Co., 246 U. S. 304, 310.)