James **WILLIAMS**, Individually and d/b/a **GMP Company**, and **Turbine Alloy Company**, Appellees,

v.

**CURTISS–WRIGHT CORPORATION**, Appellant.

No. 82–5141.

United States Court of Appeals, Third Circuit.

Argued Sept. 14, 1982.

Decided Nov. 29, 1982.

As Amended Dec. 6, 1982.

---

Helene D. Jaffe (argued), Irving Scher, Robert F. Brodegaard, Ronald D. Reynolds, Weil, Gotshal & Manges, New York City, Francis J. Vernoia, Zazzali & Kroll, Newark, N.J., for appellant.

Franklyn C. Steinberg, III (argued), Thomas Loikith, John G. Gilfillan, III, Carella, Byrne, Bain & Gilfillan, Newark, N.J., James W. Broscious, Schuman, Seybolt & Broscious, Washington, N.J., for appellees.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

The act of state doctrine requires evaluation whenever adjudication of a controversy might hinder the executive department in the conduct of foreign relations. In this antitrust case, the district court misread one of our opinions as excluding the ministerial acts of a foreign government from the scope of the doctrine. Despite this error, the court correctly refused to invoke the doctrine. Accordingly, we affirm, but on different grounds.

This appeal is one of several arising from James Williams' suit against Curtiss-Wright Corporation alleging antitrust and related state law violations. Here, defendant moved for judgment on the pleadings on the ground that the act of state doctrine makes the case nonjusticiable. The district court denied the motion, which it treated as one for summary judgment, and certified the order to this court under 28 U.S.C. § 1292(b).

The parties are competitors in the sale of surplus J–65 jet engines, parts, and accessories to foreign governments. Defendant Curtiss-Wright designed and manufactured the engine, which was originally used by the United States Navy and Air Force in the A–4 Skyhawk aircraft during the conflicts in Korea and Viet Nam. The United

States Armed Forces no longer use the engines, however, and production has been discontinued. Pursuant to a license issued by the United States, Curtiss-Wright now sells surplus engines, as well as new and reconditioned parts, to the military in Argentina, Singapore, and the Philippines.

Plaintiff James Williams is also in the business of selling J–65 engines and parts to foreign governments. Williams alleges that Curtiss-Wright has monopolized this market in violation of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, and has engaged in the common law torts of disparagement, unfair competition, and interference with prospective economic advantage. Curtiss-Wright counterclaimed that Williams misappropriated the company's trade secrets on the design and manufacture of J–65 replacement parts.[1]

Defendant moved to dismiss Williams' amended complaint on the ground that the act of state doctrine prohibits the court from examining the motives of the foreign governments for refusing to purchase J–65 engines and parts from plaintiff. Curtiss-Wright contends that the doctrine in effect bars any proof of a causal connection between its alleged activities and the lost sales claimed as injury by Williams.

The district court found two exceptions to the act of state doctrine articulated in Supreme Court opinions. The first is the so-called *Bernstein* [210 F.2d 375 (2nd Cir. 1954)] exception, where the executive branch expressly represents to the court that adjudication would not frustrate the conduct of American foreign relations. *See First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 760–770, 92 S.Ct. 1808, 1809–14, 32 L.Ed.2d 466 (1972) (Rehnquist, J., joined by 2 other Justices). The second arises when the foreign government acts in a commercial rather than a public capacity. *See Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 695–706, 96 S.Ct. 1854, 1861–67, 48 L.Ed.2d 301 (1976) (White, J., joined by 3 other Justices).[2]

The district court correctly recognized that neither exception applies to the military procurement decisions at issue here. However, it read our opinion in *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287 (3d Cir.1979), as creating still another exception—the ministerial acts of a foreign government. On that basis, the district judge denied Curtiss-Wright's motion. The court ruled that the affidavit of a logistics officer in Singapore raised a triable issue of fact as to whether military purchasing decisions in that country are ministerial or discretionary.[3]

■ The act of state doctrine is a policy of judicial abstention from inquiry into the validity of an act by a foreign state within its own territory and within the scope of its sovereignty. *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d at 1292. Because

---

1. In *Williams v. Curtiss-Wright Corp.,* 681 F.2d 161 (3d Cir.1982), we affirmed a preliminary injunction directing Williams to cease disseminating or using Curtiss-Wright's trade secrets. The order permitted Williams to manufacture for sale only those parts that could be produced without resort to the trade secret data and clearly identified as Williams' product. *Williams v. Curtiss-Wright Corp.,* 691 F.2d 168 (3d Cir.1982), reviewed a preliminary injunction prohibiting use of a numbering system proposed by Williams to identify his products.

2. We note that neither exception has ever been accepted by a majority of the Supreme Court. *See First National City Bank v. Banco Nacional de Cuba,* 406 U.S. at 776–77, 92 S.Ct. at 1817–18 (Brennan, J., dissenting) ("Bernstein" exception); *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. at 724, 96 S.Ct. at 1875 (Marshall, J. dissenting) (commercial exception). A provision in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1605(a)(2), does subject foreign states to American jurisdiction for suits based on their commercial activity in the United States. It has been argued that it would not serve American foreign policy interests to give private defendants more consideration under the act of state doctrine than a foreign government would receive in similar circumstances under the sovereign immunities act. *See, e.g.,* Note, Sherman Act Jurisdiction and the Acts of Foreign Sovereigns, 77 Colum. L.Rev. 1247, 1257 (1977).

3. Given this rationale, there is some inconsistency in the court's failure to grant partial summary judgment against plaintiff on his claims for lost sales to the other foreign countries.

the doctrine may be invoked by private litigants, it differs from sovereign immunity, which may be pleaded only by the foreign state itself. Restatement (Second) of Foreign Relations Law of the United States § 41, comment e (1965). The doctrine also differs from the defense of governmental compulsion, which is available only when the offending action was mandated by a foreign sovereign. *See Interamerican Refining Corp. v. Texaco Maracaibo, Inc.,* 307 F.Supp. 1291 (D.Del.1970).

The act of state doctrine once rested on the inherent nature of sovereign authority and principles of international law. Now, in this country at least, the doctrine's foundation has shifted to the interest in preserving the separation of powers between the branches of government. *Banco Nàcional de Cuba v. Sabbatino,* 376 U.S. 398, 423, 84 S.Ct. 923, 937, 11 L.Ed.2d 804 (1964). A court declines to exercise jurisdiction over a case that may hinder or embarrass the executive in the conduct of foreign affairs in deference to the proper distribution of functions between the judicial and the political branches in the area of international relations. *Id.* at 427–28, 84 S.Ct. at 939–40.

■ *Mannington Mills* did not create an exception to the act of state doctrine based on the ministerial-discretionary dichotomy, nor does that opinion differ with the Supreme Court's cases on point. In *Mannington Mills,* we observed by way of example that the act of state doctrine has traditionally applied to the expropriation of property by foreign governments. In those instances, we explained, "the crucial acts occurred as a result of a considered policy determination by a government to give effect to its political and public interests—matters that would have significant impact on American foreign relations." 595 F.2d at 1294. In contrast, "the granting of patents per se, in substance ministerial activity, is not the kind of governmental action contemplated by the act of state doctrine or its correlative, foreign compulsion." *Id.*

The use of the words "policy" and "ministerial" did not purport to create a new test for application of the act of the state doctrine. The distinction was meant to show that judicial abstention was not necessary in *Mannington Mills* because the routine issuance of patents is "not the type of sovereign activity that would be of substantial concern to the executive branch in its conduct of international affairs." *Id.* Our emphasis, like that of the Supreme Court, focused on the effect or lack of effect upon American foreign relations.

■ Although it misread *Mannington Mills* in refusing to dismiss Williams' suit, the district court nevertheless reached the correct result. As we stated in *Mannington Mills,* the act of state doctrine is "not lightly to be imposed." *Id.* at 1293.[4] To determine whether it applies in a given factual setting, "the court must analyze the nature of the questioned conduct and the effect upon the parties in addition to appraising the sovereign's role." *Id.* Cf. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. at 428, 84 S.Ct. at 940 (calling for a "balance of relevant considerations" in each case rather than "an inflexible and all-encompassing rule").

Here, as in *Mannington Mills,* the litigation is between two private American citizens, on allegations that American antitrust law was violated by defendant's actions in this country and abroad. The thrust of plaintiff's complaint is that Curtiss-Wright dominates the world-wide market in J–65 engines and parts as a result of monopolistic practices that exclude other competitors. There are allegations, for example, that defendant threatened Williams in the United States with economic sanctions, and pressured the United States Navy into refusing his request to recondition certain parts.

The complaint treats the foreign governments, not as wrongdoers against plaintiff, but as fellow victims of Curtiss-Wright. Williams alleges that defendant threatened to terminate warranties and technological support agreements with customers who

---

4. The burden of establishing the applicability of the act of state doctrine rests on the defendant.

*Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. at 694, 96 S.Ct. at 1861.

dealt with him. It may be seen that plaintiff's challenges are aimed at the anticompetitive effect of Curtiss-Wright's activities, not the validity of the decisions by foreign governments to boycott him.

Defendant contends, however, that the act of state doctrine necessarily forbids a court from scrutinizing the reasons for the military procurement decisions of foreign countries. Hence, the argument goes, plaintiff cannot prove a causal connection between his lost sales and defendant's activities.

The Supreme Court has not taken such a view of the doctrine. *Continental Ore Co. v. Union Carbide & Carbon Corp,* 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), held that a private defendant is not insulated from antitrust liability because its illegal scheme involves some acts by an agent of a foreign government. The plaintiff there did not question the validity of any action taken by the foreign government, nor did it attempt to hold the agent liable for its part in the scheme. Under these circumstances, the Court found admissible the plaintiff's evidence that its exclusion from a strategic metals market was caused by the defendant's manipulation of a company appointed by the foreign government as its exclusive wartime purchasing agent.

Curtiss-Wright relies heavily on *Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977), in which the plaintiff alleged that a conspiracy by the defendants caused a foreign government to nationalize his property. That case is distinguishable because, as stated earlier, claims based on expropriation are traditionally barred by the act of state doctrine. *See Industrial*

*Investment Development Corp. v. Mitsui & Co.,* 594 F.2d 48, 54 (5th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1078, 63 L.Ed.2d 318 (1980); *Outboard Marine Corp. v. Pezetel,* 461 F.Supp. 384, 398 (D.Del. 1978).[5]

It appears to us that Curtiss-Wright's concerns are more with difficulties in the production of evidence than with disruption of foreign relations. It is true that plaintiff must prove that damage resulted from the alleged illegal activity. But if the parties cannot obtain direct evidence from the foreign governments, other sources of proof may still be available. See *Continental Ore Co. v. Union Carbide & Carbon Corp,* 370 U.S. at 696–97, 82 S.Ct. at 1409. Certainly, at this stage of the litigation, we cannot say that the only relevant and admissible evidence can come from the foreign governments themselves or that they will be uncooperative.

The act of state doctrine should not be applied to thwart legitimate American regulatory goals in the absence of a showing that adjudication may hinder international relations. *See Industrial Investment Development Corp. v. Mitsui & Co.,* 594 F.2d at 55; *Timberlane Lumber Co. v. Bank of America,* 549 F.2d 597, 607 (9th Cir.1977). As we have said before, in antitrust litigation there is a public interest in clearing monopolistic activities from the channels of American commerce, even though some of the conduct occurred in foreign countries. *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d at 1293.

On the present state of the record, we do not find that litigation of this case would hinder the conduct of foreign relations by

**5.** The broad statement in *Hunt* that a court may never examine the motivation of foreign states has been criticized for immunizing the conduct of private defendants who involve a foreign government in their anticompetitive schemes. *See Industrial Investment Development Corp. v. Mitsui & Co.,* 594 F.2d at 54–55; Note, Sherman Act Jurisdiction and the Acts of Foreign Sovereigns, 77 Colum.L.Rev. 1247 (1977); Note, The Act of State Doctrine: Antitrust Conspiracies to Induce Foreign Sovereign Acts, 10 N.Y.U.J.Int'l L. & Pol. 495 (1978). The

district court cases cited by Curtiss-Wright also fail to analyze this problem adequately. *Northrop Corp. v. McDonnell Douglas Corp.,* 498 F.Supp. 1112 (C.D.Cal.1980); *General Aircraft Corp. v. Air America, Inc.,* 482 F.Supp. 3 (D.D. C.1979); *Bokkelen v. Grumman Aerospace Corp.,* 432 F.Supp. 329 (E.D.N.Y.1977). Cf. *Sage International, Ltd. v. Cadillac Gage Co.,* 534 F.Supp. 896, 910–911 (E.D.Mich.1981) (discussing the *Northrop* and *General Aircraft* decisions).

the United States government. Hence, the act of state doctrine is not a barrier. We do not rule out the possibility that significant developments may occur as the case proceeds that might require the district court to reconsider applicability of the doctrine.

Since this case reaches us on a certified order, we do not delve into the various factors listed in *Mannington Mills,* 595 F.2d at 1294–98, for determining whether a court with jurisdiction should decline to exercise its power as a matter of international comity. The parties have not briefed that issue nor was it presented in the district court.

The judgment of the district court will be affirmed.