Sarieh RASOULZADEH and Parviz Raein, Plaintiffs,

v.

The ASSOCIATED PRESS, Defendant.

No. 80 Civ. 6335–CSH.

United States District Court,
S.D. New York.

Oct. 31, 1983.

John A. Guzzetta & Associates, New York City, for plaintiff; John A. Guzzetta, Stuart J. Beck, Julie F. Sullivan, New York City, of counsel.

Rogers & Wells, New York City, for defendant; William H. Mulligan, Jr., Bruce E. Braverman, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant Associated Press ("AP") moves pursuant to Rule 12(b)(6), F.R. Civ.P., to dismiss this action for failure to state a claim upon which relief can be granted, and alternatively on grounds of *forum non conveniens.* Its major argument is that the case is non-justiciable under the "act of state" doctrine. AP's motion under Rule 12(b)(6) assumes the truth of plaintiffs' allegations, which may be summarized as follows.

Plaintiffs Sarieh Rasoulzadeh and Parviz Raein, wife and husband, are citizens of Iran, currently resident in the United States, and in the process of applying for political asylum in this country. In June, 1979, plaintiffs leased their house in Iran to AP. AP agreed in that lease not to assign the lease or sublease the premises or any part thereof without first obtaining plaintiffs' written consent. Plaintiffs had departed Iran for the United States prior to the execution of the lease. They retained an agent in Iran for general purposes, including overseeing the leased premises.

In March, 1980, Iranian authorities discovered that the premises were not being occupied by AP, but rather by the Canadian Press. Plaintiffs had not consented in writing to this subletting by AP of the premises to the Canadian Press, which constituted a breach of the lease.

AP knew, or should have known that, as the result of the action of the Canadian Embassy in sheltering and engineering the escape of American diplomats from Iran after seizure of the American Embassy in Tehran, Canadians were regarded by Iranian authorities with disfavor. Plaintiffs directly and through their representative repeatedly complained to AP concerning breach of the lease, warning that the premises might be confiscated by Iran. AP agreed to vacate the premises, but failed to do so, and ultimately, in July, 1980, the Iranian authorities confiscated plaintiffs' house. Plaintiffs sue AP for wilful tort,

which led to the entirely foreseeable consequence of the confiscation of their property.

## I.

*The Act of State Doctrine*

■ The act of state doctrine originated as a bar to suits against foreign governments or their officials. In *Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897), the Supreme Court dismissed a suit for wrongful detention against the revolutionary government of Venezuela, stating, "the courts of one country will not sit in judgment on the acts of another done within its own territory." 168 U.S. at 252, 18 S.Ct. at 84. Redress for such acts was held to be proper only through diplomatic channels in the hands of the Executive branch. *Id.; see also Shapleigh v. Mier,* 299 U.S. 468, 471, 57 S.Ct. 261, 262, 81 L.Ed. 355 (1937). (Cardozo, J.). The doctrine arises not from a lack of jurisdiction or of competence in American courts to inquire into the actions of foreign governments, but rather from recognition that under our Constitution evaluation of the validity of the acts of foreign governments is properly left to the other branches of government. *Oetjen v. Central Leather Co.,* 246 U.S. 297, 302, 38 S.Ct. 309, 310, 62 L.Ed. 726 (1918); *Ricaud v. American Metal Co.,* 246 U.S. 304, 309, 38 S.Ct. 312, 313, 62 L.Ed. 733 (1918); *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 423–424, 84 S.Ct. 923, 937–938, 11 L.Ed.2d 804 (1964). The risk which the doctrine seeks to avoid is that the judiciary "in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Sabbatino,* 376 U.S. at 423, 84 S.Ct. at 938.

■ Application of the act of state doctrine requires a case-by-case analysis of the extent to which separation of powers concerns are implicated by the action before the court, *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 316 n. 38 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); "the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches." *Sabbatino,* 376 U.S. at 428, 84 S.Ct. at 940. The Supreme Court has consequently been reluctant to create "an inflexible and all-encompassing rule," *Id.,* to govern the doctrine's application.

■ Defendant insists that because adjudication of this case will require inquiry into the motivation of the Iranian government in seizing plaintiffs' house, the act of state doctrine bars adjudication. This result, it argues, is required by *Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977), in which the Court of Appeals invoked the doctrine in dismissing a claim which would have required the plaintiffs to prove that, as here, but for the wrongful acts of the defendants a foreign government would not have seized plaintiffs' property.

In *Hunt,* plaintiffs alleged that anticompetitive activity on the part of defendant oil companies which was designed to resist attempts by the Libyan government to increase its income from oil production caused the Libyan government to seize plaintiffs' property in Libya. The pleadings neither directly challenged the validity of the Libyan government action nor joined that government as a defendant. Nevertheless, the Court of Appeals affirmed a district court dismissal under the act of state doctrine, finding that the examination of the government's motives for the seizure which was required to prove a causal connection between defendants' acts and plaintiffs' injury "inevitably" entailed consideration of the validity of the government's acts. 550 F.2d at 77. Thus the case was rendered non-justiciable by the act of state doctrine.

In the case at bar, AP vigorously insists that *Hunt* mandates an inflexible application of the act of state doctrine, requiring

dismissal of any case where, whatever the circumstances, the issues necessitate an inquiry into the motivation of a foreign government's action. If this clearly is the Second Circuit rule I must perforce follow it, suppressing any seditious thought that such rigidity is at odds with the balancing approach articulated in *Sabbatino*, 376 U.S. at 428, 84 S.Ct. at 940, from which I have already quoted. See also *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 728, 96 S.Ct. 1854, 1877, 48 L.Ed.2d 301 (1976) (Marshall, J., dissenting: "I question the wisdom of attempting the articulation of any broad exception to the act of state doctrine within the confines of a single case. The Court in *Sabbatino*, aware of the variety of situations presenting act of state questions and the complexity of the relevant considerations, eschewed any inflexible rule in favor of a case-by-case approach."). Indeed, other circuits in the antitrust context have criticized *Hunt* as overbroad and inflexible, see, *e.g., Industrial Investment Development Corp. v. Mitsui & Co., Ltd.*, 594 F.2d 48, 55 (5th Cir.1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1078, 63 L.Ed.2d 318 (1980) ("Precluding all inquiry into the motivation behind or circumstances surrounding the sovereign act would uselessly thwart legitimate American goals where adjudication would result in no embarrassment to executive department actions."); *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 325 (5th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 1435, 75 L.Ed.2d 794 (1983); *Williams v. Curtiss-Wright Corp.*, 694 F.2d 300, 304 n. 5 (3rd Cir.1982); see also *Sage International, Ltd. v. Cadillac Gage Co.*, 534 F.Supp. 896, 898–908 (E.D.Mich.1981). These are criticisms echoed by Judge van Graafeiland's dissent in *Hunt*, 550 F.2d at 79–80 ("Despite the broad language of this accepted definition, the doctrine does not purport to set up a jurisdictional bar to judicial review.... If the validity of the conduct of a foreign government is not placed in issue, its participation in the wrongdoing of individual defendants should not be permitted to screen the latter from accountability for their illegal acts.").

The criticisms of other circuits and in Judge van Graafeiland's dissent are of no more moment than my own misgivings if, in fact, *Hunt* must be read to declare a clear and unambiguous Second Circuit version of the act of state doctrine, applicable to all conceivable situations. But it is not entirely clear that *Hunt* articulates a Second Circuit rule of such all-embracing effect.

First, the two circuit judges involved in *Hunt* differed on the result. Circuit Judge Mulligan wrote the majority opinion in which District Judge Gagliardi, sitting by designation, joined. As noted, Circuit Judge van Graafeiland dissented. Judge Mulligan, lamentably, has since left the court. These considerations do not entirely deprive the majority opinion in *Hunt* of precedential effect, but they do serve, in my view, to reduce the octane of the mix.

More significantly, *Hunt* is distinguishable on the facts. In *Hunt*, the State Department had issued a note in response to Libya's seizure of plaintiff's properties, condemning the seizure as violative of international law. Thus Judge Mulligan was in a position to write: "In sum, the United States has officially characterized the motivation of the Libyan government, the very issue which Hunt now seeks to adjudicate here." 550 F.2d at 77. No comparable executive branch declaration appears in the case at bar, nor is one likely.

To be sure, Judge Mulligan went on to say: "Even if the Department of State had not spoken, the inquiry required by the third claim in this private litigation is hardly within the fact finding competence of the judicial branch." *Id.* at 78. Arguably this is *dictum;* in point of fact the State Department *had* spoken, thereby creating a traditional climate for the act of state doctrine. Interestingly, Judge van Graafeiland's dissent in *Hunt* was prompted by his concern for "the *possible* precedential impact of the majority's opinion," *id.* at 79 (emphasis added), which may be read as an indication of uncertainty in his mind about

the applicability of *Hunt* to different circumstances.

A more limited interpretation of *Hunt* is suggested by *Texas Trading & Milling Corp. v. Federal Republic of Nigeria, supra,* one of the two more recent Second Circuit decisions my research discloses which discusses *Hunt.*[1] *Texas Trading,* decided by Circuit Judges Kaufman and Timbers and District Judge Ward, was one of several cases against Nigeria and its central bank for breaches of contracts to purchase cement and of related letters of credit. Defendants pleaded sovereign immunity, lack of jurisdiction, and the act of state doctrine. The Second Circuit rejected all three defenses; the discussion concerning act of state appears at 647 F.2d at 316 n. 38:

> "Act of state analysis depends upon a careful case-by-case analysis of the extent to which the separation of powers concerns on which the doctrine is based are implicated by the action before the court. *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 728, 96 S.Ct. 1854, 1877, 48 L.Ed.2d 301 (1976) (Marshall, J., dissenting); *see Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428, 84 S.Ct. 923, 940, 11 L.Ed.2d 804 (1964). Here, adjudication of the legality of Nigeria's and Central Bank's challenged conduct does not threaten to embarrass the executive branch in its conduct of United States foreign relations, and hence does not seriously implicate the relevant policy considerations. These cases contain none of the elements that other courts have viewed to contain the seeds of such embarrassment. We are not being asked, as the Court was in *Sabbatino,* to judge a foreign government's conduct under ambiguous principles of international law. These are not cases where the challenged governmental conduct is public rather than commercial in nature, *see Alfred Dunhill of London, Inc. v. Republic of Cuba, supra,* or where its purpose was to serve an integral governmental function, *cf. Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 78 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977) (applying act of state doctrine where governmental conduct in question was part of 'a continuing and broadened confrontation between the East and West in an oil crisis which has implications and complications far transcending those suggested by appellants'). Finally, the executive branch has not stated its views in these cases regarding either the propriety of applying the act of state doctrine, as in *First National City Bank v. Banco Nacional de Cuba,* 406 U.S. 759, 92 S.Ct. 1808, 32 L.Ed.2d 466 (1972), or the validity of the very governmental act *sub judice,* as in *Hunt v. Mobil Oil Corp., supra,* 550 F.2d at 77."

One finds in this discussion a commitment to case-by-case analysis, and, at the very least, a suggestion that particular factors present in *Hunt,* but not in the case at bar, were important to the *Hunt* result.

Judge Kaufman also wrote the Second Circuit's opinion in *Associated Container Transportation (Australia) Ltd. v. United States, supra,* decided this past April. That case considered the enforceability of Civil Investigation Demands issued by the Justice Department pursuant to the Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314. Certain shipowners, foreign and domestic, members of shipping conferences and agreements, were targets of a Justice Department antitrust investigation. The statutory Civil Investigation Demands sought to reach, *inter alia,* communications between the shipowners and the governments of Australia and New Zealand. The shipowners resisted that demand, relying upon the act of state doctrine. They argued that the antitrust investigation would necessarily entail an examination of the motives of the Australian and New Zealand governments, and that the Second Circuit's decision in *Hunt* rendered such inquiry impermissible. 705

---

1. The other is *Associated Container Transportation (Australia) Ltd. v. United States,* 705 F.2d 53, 61–62 (2d Cir.1983). Neither party to the case at bar cited either case in their briefs.

F.2d at 61. The court rejected that argument. After reciting the definition of the act of state doctrine derived from *Sabbatino,* Judge Kaufman's opinion states:

"The mere fact that a lawsuit involves activities abroad, however, does not imply that American courts are without jurisdiction. See, e.g., *Filartiga v. Pena-Irala,* 630 F.2d 876, 889–90 (2d Cir.1980). The Supreme Court has indicated that application of the act of state doctrine depends upon a 'balance of relevant considerations,' *Banco Nacional de Cuba v. Sabbatino,* supra, 376 U.S. at 428, 84 S.Ct. at 940, and this Court has mandated 'a careful case-by-case analysis of the extent to which the separation of powers concerns ... are implicated.' *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 316 n. 38 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)." *Ibid.*

The Court of Appeals went on to hold that the shipowners' invocation of the act of state doctrine was premature. The government's inquiries, in the Second Circuit's words, "simply do not present the traditional situation where courts must assess the legitimacy of actions taken by a foreign government before reaching a determination on the merits of the party's case." The Justice Department did not "ask this court to question the validity of actions taken by the Australian and New Zealand governments"; nor would court enforcement of the demand for documents "involve an evaluation of the propriety of decisions" made by foreign governments. In these circumstances, the shipowners "cannot rely on the courts' unwillingness to adjudicate matters which may require them to express views contrary to those of the executive branch on the validity of actions taken by a foreign sovereign." 705 F.2d at 61. On the contrary: the shipowners sought in effect to halt an investigation being conducted by the executive branch, "whose independence the act of state doctrine primarily protects"; furthermore the State Department appeared to support the

Justice Department's effort to enforce the demands. *Ibid.* at n. 11.

The Second Circuit in *Associated Container* held that the shipowners' reliance upon *Hunt* was misplaced. Quoting *Hunt* at 550 F.2d at 77, and adding his own emphasis, Judge Kaufman wrote that the claim in *Hunt* was dismissed because it "is ... not viable unless the judicial branch examines the *motivation* of the Libyan action and that inevitably involves its validity." In *Associated Container,* the government had not yet made formal antitrust charges; and the requested documents "may reveal antitrust violations wholly unrelated to either the validity of actions taken by the Australian or New Zealand governments or the motives of those foreign sovereigns." 705 F.2d at 62. Furthermore, whereas the *Hunt* plaintiffs could not succeed "without proving that the defendants' conspiracy *caused* the Libyan government to confiscate their property," the Justice Department "need not demonstrate private injury to establish a violation of the antitrust laws." The government could, therefore, prove an illegal monopolization "without making any claims concerning the acts or motivations of the Australian government.... Accordingly, it cannot be determined at this stage of the proceedings whether any court will ever be called upon to investigate the validity of actions taken by a foreign government." *Ibid.* (emphasis in original).

*Associated Container's* discussion of *Hunt* can be read as endorsing its conclusion that examination of the motivation of a foreign government's action "inevitably involves its validity," and is accordingly non-justiciable under the act of state doctrine. If that is a rule of law which always applies in every circumstance, then it militates in favor of dismissing the case at bar. But the actual holding in *Associated Container* arises out of entirely different circumstances, and its analysis of the doctrine reiterates the importance of balancing relevant considerations, and proceeding in a careful case-by-case fashion.

In effect, AP argues on the basis of its reading of *Hunt* for an inflexible, *per se* application of the act of state doctrine. I conclude that the Second Circuit is not rigidly committed to such a rule. Rather, the proper emphasis has been and remains upon a balancing of the relevant considerations, and careful analysis of the facts of each case.

Having crossed that Rubicon, the result in the case at bar follows without difficulty. The act of state doctrine would apply to this case only if it is wrenched loose from its traditional moorings: those concerns which both define and limit the doctrine's purpose.

Accepting as I must under *Hunt* that Iran's motivation for the seizure of plaintiffs' property "inevitably involves its validity," I am still at liberty under *Texas Trading* to conclude that "adjudication of the legality of [Iran's conduct] does not threaten to embarrass the executive branch in its conduct of United States foreign relations, and hence does not seriously implicate the relevant policy considerations." 647 F.2d at 316 n. 38. The executive branch has no interest in a tort claim by Iranian citizens against an American corporation arising out of the latter's breach of a lease agreement, the use of plaintiffs' Iranian property by Canadians, and the subsequent confiscation of the property by Iran. Unlike *Hunt,* the executive branch has taken no position with respect to the validity of the governmental acts at bar, and there is no conceivable reason why it should do so. Nor may Iran's confiscation of plaintiffs'

property fairly be compared to that "integral governmental function" in *Hunt* which formed a part of "a continuing and broadened confrontation between the East and West in an oil crisis which has implications and complications far transcending those suggested" by plaintiffs. *Ibid.* Plaintiffs' house was seized. They claim the seizure was the foreseeable consequence of AP permitting Canadians to use it. There are no global implications or complications. I decline to apply the act of state doctrine to this case. Resolution of plaintiffs' claims will not require sitting in judgment on the acts of a foreign government. Because the situation is of no importance to American foreign relations and of no interest to the political branches, the "balance of relevant considerations," *Sabbatino,* 376 U.S. at 428, 84 S.Ct. at 940, *quoted in Associated Container,* 705 F.2d at 61, indicates that the act of state doctrine should not be applied in these circumstances. A contrary holding would "thwart legitimate American ... goals in the absence of a showing that adjudication may hinder international relations." *Williams v. Curtiss-Wright Corp.,* 694 F.2d 300, 304 (3d Cir.1982).[2]

## II.

*Forum Non Conveniens*

■ Defendant also moves to dismiss the complaint on the alternative ground of *forum non conveniens.* AP suggests that plaintiffs should be relegated to the courts

---

**2.** The other cases relied upon by AP arise out of entirely different circumstances, and do not require a contrary result. *Underhill v. Hernandez, supra,* involved a suit for wrongful detention directly against the revolutionary government of Venezuela. *Sabbatino, supra,* dealt with a claim against proceeds of property expropriated by Cuba. The acts of foreign governments were directly challenged in these suits. In *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909), and *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92 (C.D.Cal.1971), *aff'd per curiam,* 461 F.2d 1261 (9th Cir.), *cert. denied,* 409 U.S. 950, 93 S.Ct. 272, 34 L.Ed.2d 221 (1972), the plaintiffs claimed that defendants instigated acts of appropriation by complaint foreign govern-

ments, so that the governmental acts were in effect those of the defendants. In *Kunstsammlungen Zu Weimar v. Elicofon,* 678 F.2d 1150 (2d Cir.1982), the claimant-intervenor directly challenged the effect of a Thuringian statute which extinguished the claimant's contractual rights. Application of the act of state doctrine in these circumstances does not require its application in the case at bar, where the validity of a foreign government's action is not directly attacked, there is no suggestion that the domestic defendant and the foreign government acted in league with each other, and neither the defendant's alleged wrongdoing nor the resulting governmental act implicate in the least executive, political or foreign relations concerns of the United States government.

of Iran. That suggestion, while not formally abandoned at oral argument, is put forward in relatively faint tones. It is easy enough to understand why.

While important evidence is undoubtedly located in Iran, a relevant factor under *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 840, 91 L.Ed. 1055 (1947) and its progeny, the doctrine of *forum non conveniens*, a creature of equity, "presupposes that an alternative forum is available." *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). It is not sufficient that the alternative forum simply be shown to have jurisdiction over the matter. If the remedy provided by the alternative forum "is so clearly inadequate or unsatisfactory that it is no remedy at all," the district court "may conclude that dismissal would not be in the interests of justice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). A motion to relegate a plaintiff to a foreign forum will be denied if the plaintiff shows that foreign law is inadequate, or that "conditions in the foreign forum ... plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice therein." *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393–94 (5th Cir.1983).

In the case at bar, I have no confidence whatsoever in the plaintiffs' ability to obtain justice at the hands of the courts administered by Iranian mullahs. On the contrary, I consider that if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot. There is, in these circumstances, no substance to AP's motion based upon *forum non conveniens*.

### III.

■ AP also argues in favor of dismissal that it had the right to use the house as it saw fit. But plaintiffs allege that defendant's use was both a sublet in contravention of terms of the lease and knowingly illegal; those allegations are deemed true. The authority defendant cites is inapposite. These are fact issues requiring trial.

### IV.

For the foregoing reasons, defendant's motion is denied in its entirety.

On the issue relating to the act of state doctrine, I would be prepared to certify the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), if either party makes an application for such certification within fourteen (14) days of the date of this order. Failing such application, the case will be placed upon the Court's ready trial calendar, counsel having represented that discovery has been completed.

It is So Ordered.