USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1188

 HAIDEE IRAGORRI, ETC.,

 Plaintiff, Appellant,

 v.

 INTERNATIONAL ELEVATOR, INC.,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. D. Brock Hornby, U.S. District Judge]

 Before

 Selya, Boudin and Lynch,
 
 Circuit Judges.
 
 
 
 Anthony J. Natale, with whom Julie C. Molloy and Pepe & Hazard
LLP were on brief, for appellant.
 Catherine R. Connors, with whom Jared L. Tardy and Pierce
Atwood were on brief, for appellee.

January 28, 2000

 
 SELYA, Circuit Judge. After Mauricio Iragorri plummeted
down an elevator shaft to his death, his widow sued various
entities, including International Elevator, Inc. (IEI), alleging
culpable negligence. The United States District Court for the
District of Maine dismissed the claim against IEI on forum non
conveniens grounds. Discerning no abuse of discretion, we affirm.
I. BACKGROUND
 A native of Colombia, Iragorri emigrated to the United
States with his wife and two young children in the early 1980s. 
The family settled in Florida, and all four became naturalized
citizens in 1989. In the fall of 1992, the children, then
teenagers, were participating in an educational exchange program
arranged by their Florida high school, and the appellant was living
with them in Bogota. Iragorri also was in Colombia.
 A. The Accident.
 The following events took place during the early morning
hours of October 3, 1992. Shortly after 1:00 a.m., Iragorri
entered the Portada del Mar, a partially finished apartment
building in Cali, to visit his mother. The doorman, Danilo Osorio
Garcia (Osorio), informed him that the elevators were out of order. 
Iragorri took the stairs to the fifth floor. The record is
tenebrous concerning his condition; Osorio initially told
investigators that Iragorri was inebriated, but later testified
that he seemed fine.
 About ten minutes after Iragorri's arrival, Osorio heard
a loud noise. Upon investigation, he claims to have found a
screwdriver holding open the elevator doors on the fifth floor. He
then heard moans emanating from the elevator shaft and discovered
that Iragorri had plunged to the bottom, sustaining fatal injuries.
 B. IEI's Role.
 IEI was incorporated in Maine in 1924, as a subsidiary of
Otis Elevator (Otis). Otis divested itself of its South American
interests in 1988, spinning off IEI in the process. From that
point forward, IEI operated exclusively in South America (although
it retained its Maine charter). It still distributes and services
Otis elevators. Although IEI did not install the elevators that
serve the Portada del Mar complex, it did contract to maintain
them.
 Roughly six hours before Iragorri entered the premises,
Osorio called IEI to report that both of the building's elevators
were out of order. An IEI employee, Gerardo Ortiz, responded
promptly and determined that the cable on the left-hand elevator
had snapped and that the elevator itself was in the basement. He
proceeded to the fifth floor, opened the elevator doors, and worked
on the right-hand elevator. When he was through, he claims to have
closed the doors. He then went to the basement to inspect the
downed left-hand elevator. Once there, he concluded that he would
not be able to complete the repairs that day. He showed Osorio
what was wrong with both elevators and asked Osorio to turn off the
power pending his return. When questioned by officials, Ortiz
could not explain how a screwdriver became wedged in the elevator
doors (if, indeed, that was the case).
 C. The Litigation.
 Mrs. Iragorri brought a wrongful death action against a
number of defendants in the United States District Court for the
District of Connecticut. All the defendants moved to dismiss. The
court retained jurisdiction over the claims against Otis and United
Technologies (Otis's corporate parent), but determined that IEI
was not subject to in personam jurisdiction in Connecticut and
therefore transferred the case against it to Maine. See 28 U.S.C.
 1404(a). Apart from the fact that IEI had been incorporated in
Maine (and was, therefore, amenable to service there), neither
party had any significant contacts with that jurisdiction. When
IEI moved for dismissal in the transferee court, the district judge
referred the motion to a magistrate judge, see Fed. R. Civ. P.
72(b), who recommended granting it on forum non conveniens grounds. 
Mrs. Iragorri objected. The district court, affording de novo
review, approved the magistrate's report and recommendation. This
appeal ensued.
II. STANDARD OF REVIEW
 Apart from errors of law, forum non conveniens
determinations "may be reversed only when there has been a clear
abuse of discretion." Piper Aircraft Co. v. Reyno, 454 U.S. 235,
257 (1981). Such an abuse transpires if the nisi prius court (1)
fails to consider a material factor; (2) relies substantially on an
improper factor; or (3) assesses the appropriate factors but
clearly errs in weighing them, with the result that its assessment
falls outside the universe of plausible outcomes. See Nowak v. Tak
How Invs., Ltd., 94 F.3d 708, 719 (1st Cir. 1996); Mercier v.
Sheraton Int'l, Inc., 935 F.2d 419, 423 (1st Cir. 1991) (Mercier
I). In administering this test, a reviewing court must assiduously
avoid twin temptations: it must neither substitute its judgment
for that of the district court nor strike the balance of relevant
factors anew. See Piper, 454 U.S. at 257.
III. DISCUSSION
 When a defendant moves for dismissal on forum non
conveniens grounds, it bears the burden of showing both that an
adequate alternative forum exists and that considerations of
convenience and judicial efficiency strongly favor litigating the
claim in the alternative forum. See Mercier I, 935 F.2d at 423-24. 
Courts generally deem the first requirement satisfied if the
defendant demonstrates that the alternative forum addresses the
types of claims that the plaintiff has brought and that the
defendant is amenable to service of process there. See Piper, 454
U.S. at 254 n.22. The second requirement evokes a more
sophisticated balancing: the defendant must show that the
compendium of factors relevant to the private and public interests
implicated by the case strongly favors dismissal. See Gulf Oil
Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Mercier I, 935 F.2d
at 423-24.
 The Supreme Court has provided substantial guidance on
the nature of the factors to be assayed in the second step of the
analysis. Considerations relevant to the litigants' private
interests include "the relative ease of access to sources of proof;
availability of compulsory process for attendance of unwilling, and
the cost of obtaining attendance of willing, witnesses; [and the]
possibility of view of premises, if view would be appropriate to
the action." Gilbert, 330 U.S. at 508. Evaluating private
interests also requires the trial judge to pay heed to "all other
practical problems that make trial of a case easy, expeditious and
inexpensive." Id. We have no doubt that the flip side of this
coin has equal pertinence; the judge must consider those factors
that threaten to make trial more cumbersome, prolong it, or drive
up costs. Factors relevant to the public interest include such
things as the administrative difficulties of docket congestion; the
general goal of "having localized controversies decided at home,"
and concomitantly, ease of access to the proceedings on the part of
interested citizens; the trier's relative familiarity with the
appropriate rules of decision; and the burdens of jury duty. Id.
at 508-09.
 In all events, as to both private and public interests,
flexibility is the watchword. See Piper, 454 U.S. at 249-50. The
compendia provided by the Court comprise a helpful starting point,
but not every item applies in every case and, in the last analysis,
the list of factors is illustrative rather than all-inclusive. 
"[T]he ultimate inquiry is where trial will best serve the
convenience of the parties and the ends of justice." Koster v.
(American)Lumbermens Mut. Cas. Co., 330 U.S. 518, 527 (1947).
 With this brief preface, we test the district court's
decision against the two-step framework.
 A. Adequate Alternative Forum.
 In considering a forum non conveniens claim, an inquiring
court should begin by determining the existence vel non of an
adequate alternative forum for the prosecution of the action. The
court below impliedly concluded that Colombia constitutes such a
forum. The appellant assails this conclusion on two bases.
 As an initial matter, the appellant complains that the
district court failed to afford due consideration to her family's
apprehensions anent their personal safety should they be forced to
litigate in Colombia. In her view, the attendant dangers, as
evidenced by the State Department's advisory against unnecessary
travel (especially to Cali), make Colombia an inadequate or
unavailable alternative to the United States for the purpose of
litigating her claim.
 The district court explored this argument at some
length. In the end, it found no particularized evidence that
travel to Colombia would imperil the Iragorris, and, relatedly,
found much evidence that they would be able to negotiate the
country more easily than ordinary American visitors. These
factors, the court concluded, neutralized the force of the State
Department's warning. We cannot term this judgment unreasonable.
 There are, of course, cases in which courts have
discussed the possibility that the dangers inherent in traveling to
a proposed forum might make litigation there a practical
impossibility (and, thus, no real alternative). See, e.g.,
Rasoulzadeh v. Associated Press, 574 F. Supp. 854, 861 (S.D.N.Y.
1983), aff'd, 767 F.2d 908 (2d Cir. 1985). But see Guidi v. Inter-
Continental Hotels Corp., No. 95 CIV. 9006 LAP, 1999 WL 228360, at
*3-4 (S.D.N.Y. Apr. 20, 1999) (limiting Rasoulzadeh to cases in
which danger implicates the plaintiff's access to the alternate
justice system). Nevertheless, it is the trial judge who best
appreciates the case's nuances and the parties' circumstances, and
the appellant points to no case in which an appellate tribunal has
found overarching danger despite a trial court finding that the
proposed forum constituted a viable alternative. The record
reflects no basis to make this case the first.
 In a nimble attempt to sidestep this reality, the
appellant lodges a claim of legal error: she asseverates that
certain of the items cited by the district court as evidence that
Colombia's dangers were less inhibitory to her and her children 
e.g., their previous Colombian citizenship, their residence in
Colombia in 1991 and 1992, their family ties (the record mentions
close relatives on both sides of the family who live in Colombia),
the children's tenure as exchange students, and their conversance
with the Spanish language were improperly factored into the
equation. We do not agree. A plaintiff's familiarity with the
alternative forum, her comfort level there, and her fluency in the
language used in its courts may be weighed in deciding a forum non
convenience motion. See Royal Bed & Spring Co. v. Famossul
Industria E Comercio de Moveis Ltda., 906 F.2d 45, 52-53 (1st Cir.
1990); see also Marc O. Wolinsky, Comment, Forum Non Conveniens and
American Plaintiffs in the Federal Courts, 47 U. Chi. L. Rev. 373,
382-83 (1980) (positing that American citizenship is a factor in
favor of plaintiffs' convenience only insofar as it is a proxy for
"geography, language barriers, and unfamiliarity with foreign
systems") (cited with approval in Piper, 454 U.S. at 256 n.24). 
Although these factors more often relate to the second-stage
balancing, we believe that in light of the appellant's contention
that she and her children could not safely travel to Colombia, the
court reasonably deemed them relevant to the suitability of the
proposed alternative forum. It follows that, on the peculiar facts
of this case, the district court did not commit an abuse of
discretion in assigning diminished weight to the State Department's
advisory.
 The second strand of the appellant's argument derives
from a footnote in which the Piper Court stated that if "the remedy
offered by the other forum is clearly unsatisfactory, the other
forum may not be an adequate alternative." 454 U.S. at 254 n.22. 
Using footnote 22 as a springboard, the appellant asserts that the
lack of an adequate remedy under Colombian law renders a Colombian
forum inconcinnous for purposes of this case. Refined to bare
essence, this assertion boils down to a claim that the Colombian
Supreme Court occasionally has limited damages for pain and
suffering in wrongful death actions (called "moral damages" there)
to amounts that seem paltry when converted into United States
dollars.
 The lower court's weighing of the proof on this point
withstands scrutiny. The court found no credible evidence of an
artificial ceiling on provable economic loss applicable to wrongful
death actions brought in Colombia and, relatedly, found no credible
evidence to support the appellant's suggestion that a lid of some
sort applies generally in such cases. At worst, a plaintiff forced
to litigate a wrongful death action in Colombia rather than in an
American jurisdiction faces a downgrade in remedy, i.e., an
institutional inhospitability to generous awards for non-economic
losses. This circumstance, in and of itself, does not impugn the
adequacy of the proposed alternative forum. See, e.g., id. at 255
(holding that the unavailability of a cause of action for strict
liability does not render the alternate forum inadequate); Ahmed v.
Boeing Co., 720 F.2d 224, 226 (1st Cir. 1983) (stating that the
unsatisfactory remedy exception applies only "where transfer to a
foreign forum means application of a substantive law that is both
different and basically unjust").
 We need not tarry. Here, the district court supportably
found that the Colombian courts entertain wrongful death actions,
that they grant both pecuniary and moral damages in such suits,
that the statute of limitations had not expired in Colombia, and
that IEI was amenable to service of process there. It also found
the appellant's evidence of unfavorable changes in the law to be
weak, disputed, and ultimately unconvincing. No more is exigible
to sustain the court's determination that an adequate alternative
forum exists. Cf. Piper, 454 U.S. at 254 n.22 (predicting that
footnote 22 would come into play only "[i]n rare circumstances"). 
 B. Private and Public Interests.
 Having verified the district court's implicit conclusion
that an adequate alternative forum exists, we turn to the second
stage of the inquiry. Before reaching the merits, however, we must
address a threshold matter.
 The second-stage inquiry, as we have said, directs the
trial court to balance an array of factors relevant to both private
and public interests, and to ascertain whether that balance
justifies dismissal. The usual formulation of the rule of
decision, adopted by the district court, focuses on the defendant's
ability to prove that the result of the balancing "strongly
favor[s]" the alternative forum. Mercier I, 935 F.2d at 423-24. 
The appellant challenges this formulation and suggests that a trial
court should not dismiss for forum non conveniens "except upon a
clear showing of facts" that makes the plaintiff's preferred forum
inappropriate because they "establish such oppressiveness and
vexation to a defendant as to be out of all proportion to
plaintiff's convenience." Koster, 330 U.S. at 524 (dictum).
 In our view, the lower court's decision demonstrates an
awareness of the appropriate legal standards for forum non
conveniens analysis. The Koster Court's use of the term
"oppressiveness and vexation" neither created an independent
standard nor raised the bar for dismissal in forum non conveniens
cases. See Alcoa S.S. Co. v. M/V Nordic Regent, 654 F.2d 147, 151-
52 (2d Cir. 1980) (en banc); Pain v. United Techs. Corp., 637 F.2d
775, 783 (D.C. Cir. 1980); cf. Lacey v. Cessna Aircraft Co., 862
F.2d 38, 42, 44 (3d Cir. 1988) (quoting Koster and then summarizing
the applicable standard as imposing a burden to show that the
aggregate of relevant factors "weigh[s] heavily on the side of
dismissal"). Lower courts often must tease a standard from a
plethora of phrases that collectively describe a legal principle,
and the court below correctly divined that, at the second stage of
the inquiry, a defendant's right to obtain a dismissal on forum non
conveniens grounds hinges on whether it can show that
considerations of convenience and judicial efficiency strongly
favor the proposed alterative forum. After all, the "strongly
favors" language has deep roots in Supreme Court precedent, see
Gilbert, 330 U.S. at 508, and the Court's subsequent mentions of
the Koster dictum lend no support to the notion that the dictum
somehow supplanted the "strongly favors" test. See, e.g., Norwood
v. Kirkpatrick, 349 U.S. 29, 35 (1955). This court heretofore has
used the "strongly favors" standard as a distillation of the
"oppressiveness and vexation" language, see Mercier I, 935 F.2d at
423-24, and we continue to believe that this is the proper
perspective.
 This brings us to the balancing of the relevant private
and public interests. We start by acknowledging the thoroughness
of the district court's canvass; it thoughtfully discussed all the
pertinent factors cited by the parties and reacted to each item. 
On a more global note, the court explained why convenience,
efficiency, and fairness all militated in favor of a trial in
Colombia. It emphasized that the accident had occurred there and
that Ortiz and Osorio the two principal witnesses on liability 
would play leading roles at trial. The court remarked the need to
gauge these witnesses' credibility and stressed the salience of
demeanor evidence in that endeavor. It then observed that neither
witness could be compelled to attend a trial in Maine and that, in
any event, both men were Spanish speakers. In addition, the court
noted that, should the case proceed in Maine, IEI would be unable
to implead other potentially responsible parties, that it would be
impossible to conduct a view, and that unfamiliar law would supply
the substantive rules of decision. Considering these and other
factors, the court determined that the balance of private and
public interests strongly favored recourse to a Colombian forum.
 The appellant's attack on this determination occurs on
several fronts. First, she declares that the court gave lip
service to, but did not enforce, IEI's burden of proof. In an
effort to document this ipse dixit, she asserts that the court
expressed some ambivalence, stating at one point that "neither
forum alternative in this case is particularly satisfactory," yet
nonetheless granted IEI's motion to dismiss.
 We do not think that this allusion undermines the
district court's ruling. First, the quoted statement is not
necessarily at odds with the use of the correct standard. See
infra at 16-18. Second, since other references in the decision
make it plain that the court fully understood the operative legal
principles, even an infelicitous choice of phrase would not warrant
reversal. See Lenn v. Portland Sch. Comm, 998 F.2d 1083, 1087-88
(1st Cir. 1993); Clauson v. Smith, 823 F.2d 660, 663 n.3 (1st Cir.
1987); United States v. Kobrosky, 711 F.2d 449, 456 (1st Cir.
1983). The lower court's rescript makes pellucid its awareness of
the correct burden of proof, and it reached a result that was
entirely consonant with that burden. In such circumstances, we
decline to presume that the court said one thing and did another. 
 The appellant next asserts that the district court failed
to consider the public interest that attaches to resolving a
wrongful death action brought by United States citizens in a
federal court. Here, too, her argument borders on the
metaphysical. The district court mentioned the tenet that a United
States court has a particular interest in an action brought by a
citizen, see Mercier I, 935 F.2d at 429-30, and proceeded to weigh
the appellant's, her children's, and her decedent's citizenship in
the balance. The court also noted, however, that a plaintiff's
lack of relationship to the forum state may diminish the ultimate
influence of this interest. This countervailing consideration was
properly added to the mix both as a matter of legal theory, see
Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1355 (1st Cir.
1992) (Mercier II), and as a matter of fact (given Maine's tenuous
relationship to the case). Thus, the appellant's plaint, stripped
of rhetorical flourishes, is less that the district court
overlooked a factor and more that the court chose to synthesize
several related factors. We see no abuse of discretion in the
court's handling of this aspect of the case.
 The appellant also maintains that the district court
overemphasized the importance of the testimony to be given by Ortiz
and Osorio, and impermissibly discounted the witnesses that she
planned to call (who, she said, would refuse to appear in Colombia
because of incipient danger there). Once again, the court
explicitly addressed these concerns. It recognized that trial in
Colombia likely would dissuade certain witnesses from appearing in
person, but found that the problems of proof would be exacerbated,
not ameliorated, by a trial in Maine (where crucial liability
witnesses whose credibility was under attack most likely would
appear, if at all, by video deposition with the assistance of a
translator). In the court's view, the language barrier would
prevent an American jury from evaluating their credibility
effectively. The appellant's suggested witnesses were experts,
concerned primarily with damages, and the court decided that their
testimony would be more amenable to depositions and translation
(if, indeed, local experts could not be retained).
 This is a judgment call, pure and simple, and illustrates
the wisdom of granting the district court a margin of discretion in
the area of forum non conveniens. The trial judge is in the best
position to know the interstices of any particular case and to
evaluate both the parties' interests and the likely efficacy of the
truth-finding process. See Gilbert, 330 U.S. at 508. Given the
standard of review, it is not within our proper purview to disturb
a trial court's reasoned, record-rooted determination that justice
could be done more perfectly in a foreign forum than in an American
jurisdiction because of the relative ease of communicating the most
important (and the most controversial) testimony to the factfinder.
 The case law supports such a result. For one thing, the
facts as found by the district court closely parallel the situation
in Piper, 454 U.S. at 257-58 (upholding a trial court determination
that in spite of "private interests point[ing] in both directions
. . . fewer evidentiary problems would be posed if the trial were
held in Scotland"). For another thing, we have emphasized in an
analogous context that "the live testimony of [key] witnesses for
the purposes of presenting demeanor evidence [is] essential to a
fair trial." Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 952 (1st
Cir. 1991). Indeed, on one occasion we approved a determination
that because a particular witness's "credibility would be pivotal
to any judicial resolution of the factual issues at the root of the
parties' dispute . . . deposition testimony and letters rogatory,
even if available to the American court, would be less than
satisfactory substitutes for in-person testimony." Mercier II, 981
F.2d at 1356. Finally, the Court has suggested that the
availability of expert witnesses may not be as significant as the
availability of fact witnesses. See Gilbert, 330 U.S. at 509. 
Given these authorities, we are unprepared to hold that the
district court misused its discretion by dismissing the action in
favor of an imperfect, but nonetheless highly preferable, forum.
 As her parting shot, the appellant laments the district
court's finding that her financial position was irrelevant to its
decision. This jeremiad misconstrues the situation. In Mercier
II, we affirmed a finding that an alternate forum was adequate in
spite of economic impositions on the plaintiffs, noting that the
plaintiffs were not indigent and that inquiry into their financial
capability to bring suit in the proposed alternate forum did not
reveal any insuperable obstacles. See 981 F.2d at 1353. On
appeal, the appellant, unlike in Mercier II, raises the
impecuniousness argument not in terms of the adequacy of the
alternate forum, but, rather, in terms of the balance of
convenience. We agree with her underlying premise: at the second
stage of a forum non conveniens analysis, financial hardships may
be relevant. Moreover, even if such a hardship does not make
foreign litigation impossible, it nonetheless may constitute one of
the "practical problems" that help to determine whether trial of a
case in a given venue will (or will not) be convenient. Gilbert,
330 U.S. at 508. That said, this avenue of inquiry proves a dead-
end for Mrs. Iragorri.
 The mere suggestion of greater financial strain is
meaningless unless and until the plaintiff demonstrates the nature
and extent of the supposed limitations upon her ability to
litigate. Here, the appellant wholly failed to adduce any evidence
of her financial resources (or the lack thereof). It is hornbook
law that an appellate argument cannot survive the proponent's
failure to supply a sufficient factual predicate for it. See,
e.g., Casa Marie Hogar Geriatrico, Inc. v. Rivera Santos, 38 F.3d
615, 618 n.2 (1st Cir. 1994); United States v. Slade, 980 F.2d 27,
30 (1st Cir. 1992). So it is here.
 We need go no further. The appellant has advanced a
golconda of arguments in an effort to persuade us that the decision
to dismiss the case on forum non conveniens grounds represented an
abuse of discretion. Even given the presumption in favor of the
plaintiff's choice of forum, see Nowak, 94 F.3d at 270 a
presumption that the district court acknowledged and to which it
paid obeisance none of these arguments is convincing. That we,
if writing on a pristine page, might have resolved the decisional
calculus differently is of no moment. As the Supreme Court has
written, "where the [trial] court has considered all relevant
public and private interest factors, and where its balancing of
these factors is reasonable, its decision deserves substantial
deference." Piper, 454 U.S. at 257.

Affirmed.