**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROVINCIAL GOV'T OF MARINDUQUE,
                    *Plaintiff-Appellant,*

                    v.

PLACER DOME, INC.; BARRICK GOLD
CORP.,
                    *Defendants-Appellees.*

No. 07-16306

D.C. No.
CV-05-01299-BES

OPINION

Appeal from the United States District Court
for the District of Nevada
Brian E. Sandoval, District Judge, Presiding

Argued and Submitted
March 10, 2009—San Francisco, California

Filed September 29, 2009

Before: M. Margaret McKeown and Sandra S. Ikuta,
Circuit Judges, and Frederic Block,* District Judge.

Opinion by Judge McKeown

---

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

14015

## COUNSEL

Walter J. Scott, James D. McCarthy (argued), and David H. Ammons, Diamond McCarthy LLP, Dallas, Texas; Neil Peck, Snell & Wilmer LLP, Denver, CO; Patrick G. Byrne, Las Vegas, Nevada, for the plaintiff-appellant.

Steve Morris, Rex D. Garner, Morris Pickering & Peterson, Las Vegas, Nevada; Jerrold J. Ganzfried (argued), Edward Han, Martin Cunniff, Howrey LLP, Washington, DC, for the defendants-appellees.

## OPINION

McKEOWN, Circuit Judge:

Under the act of state doctrine, "the acts of foreign sovereigns taken within their own jurisdiction shall be deemed valid." *W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 409 (1990). Founded on international law, the doctrine also serves as a basis for federal-question jurisdiction when the plaintiff's complaint challenges the validity of a foreign state's conduct. We consider here whether the district court had subject-matter jurisdiction over this suit, based upon the act of state doctrine, such that removal from state to federal court was proper. Because none of the referenced conduct by the foreign sovereign—in this case, the Philippine government—is essential to any of the plaintiff's causes of action, we reverse the district court's exercise of subject-matter jurisdiction under the act of state doctrine.

### BACKGROUND

The Provincial Government of Marinduque ("the Province") sued Placer Dome Corporation in 2005 in Nevada state court for alleged human health, ecological, and economic damages caused by the company's mining operations on Marinduque, an island province of the Republic of the Philippines.[1] According to the complaint, Placer Dome severely polluted the lands and waters of Marinduque for some thirty

---

[1]For purposes of determining whether removal was proper, our analysis concerns "the pleadings filed at the time of removal without reference to subsequent amendments." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998). The factual background is thus derived from the allegations in the original complaint filed in state court.

The Province sued in Nevada because, according to the complaint, Placer Dome conducts significant and continuous business in the state.

years, caused two cataclysmic environmental disasters, poisoned the islanders by contaminating their food and water sources, and then left the province without cleaning up the mess—all in violation of Philippine law. The Province further alleges that Placer Dome received certain forms of assistance in its mining endeavors from the Philippine government. More particularly, the Province contends that former Philippine President Ferdinand Marcos, in exchange for a personal stake in the mining operations, eased various environmental protections obstructing Placer Dome's way.

Immediately after the Province filed suit, Placer Dome removed the case to federal district court for the District of Nevada on the basis of federal-question jurisdiction. Specifically, Placer Dome contended that the case "tender[ed] questions of international law and foreign relations." The Province moved for an order requiring Placer Dome to show cause why the action should not be remanded to the state court due to a lack of subject-matter jurisdiction. The district court denied the Province's motion, holding that federal-question jurisdiction existed under the act of state doctrine of the federal common law. Placer Dome moved to dismiss the suit for lack of personal jurisdiction and *forum non conveniens*. The district court granted limited discovery on personal jurisdiction.[2] Before discovery was concluded, in March 2007, the United States Supreme Court issued *Sinochem International Co. v. Malaysia International Shipping Corp.*, announcing that district courts have latitude to rule on the threshold issue of *forum non conveniens* before definitively ascertaining subject-matter and personal jurisdiction. 549 U.S. 422, 432 (2007). The district court stayed jurisdictional discovery, and ordered briefing on the issue of *forum non conveniens*. Invoking *Sinochem*, the district court dismissed the matter on *forum non conveniens* grounds in favor of a Canadian forum. In rul-

---

[2]Around this time, Barrick Gold Corporation was joined as a defendant because it had obtained a controlling 81 percent interest in Placer Dome. We refer to both defendants collectively as "Placer Dome."

ing on the Province's motion for reconsideration, the district court affirmed its earlier conclusion that "subject matter jurisdiction does, in fact, exist in this case, based upon the act of state doctrine."

## ANALYSIS

## I.    Removal to Federal Court

This case was removed from state to federal court under 28 U.S.C. § 1441(a)[3] on Placer Dome's representation that the Province's claims implicated the federal common law of foreign relations. Removal was proper only if the district court would have had original jurisdiction over the claims. Placer Dome asserted jurisdiction pursuant to 28 U.S.C. § 1331, which states that federal courts have jurisdiction over cases presenting questions of federal constitutional, statutory, and common law.

Federal courts may exercise federal-question jurisdiction over an action in two situations. First, and most commonly, a federal court may exercise federal-question jurisdiction if a federal right or immunity is " 'an element, and an essential one, of the plaintiff's cause of action.' " *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 11 (1983) (quoting *Gully v. First National Bank*, 299 U.S. 109, 112 (1936)). Thus, the federal question on which jurisdiction is premised cannot be supplied via a defense; rather, the federal question must "be disclosed upon the face of the complaint, unaided by the answer." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974) (*per curiam*). Second, a federal court may have such jurisdiction if a state-law

---

[3]The removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally-approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Such a federal issue must be "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.

The removal statute is strictly construed against removal jurisdiction. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). The defendant bears the burden of establishing that removal is proper. *Id.*

## II.  Determination of Removal Jurisdiction in Light of *Sinochem*

The question before us, then, is whether the district court had subject-matter jurisdiction under 28 U.S.C. § 1331. We review *de novo* a district court's determination that subject-matter jurisdiction exists for a case that has been removed. *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002).

Before considering this issue, we first address Placer Dome's assertion that the district court dismissed this case on *forum non conveniens* grounds without resolving the issue of subject-matter jurisdiction. According to Placer Dome, the district court exercised its discretion under the Supreme Court's decision in *Sinochem* "not [to] resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant if it determines that, in any event, a foreign tribunal is plainly the more suitable arbiter of the merits of the case." 549 U.S. at 425. If the district court did not determine subject-matter jurisdiction, Placer Dome intimates, then we are presented with only the *forum non conveniens* dismissal to review. Placer Dome further argues that, even if the district court concluded that

subject-matter jurisdiction existed, that holding was alternative to the *forum non conveniens* determination.

We question whether *Sinochem* restricts our ability to address an issue of subject-matter jurisdiction, even if characterized as an alternative holding. "[W]e have an independent obligation to examine our own and the district court's jurisdiction." *Rivas v. Rail Delivery Serv., Inc.*, 423 F.3d 1079, 1082 (9th Cir. 2005). That obligation necessarily carries with it the authority to determine for ourselves, under *Sinochem*, whether the jurisdictional issue should be addressed, regardless of the path the district court chose to take.

In any event, Placer Dome misapprehends the proceedings below. Following removal of this suit, the Province challenged the court's subject-matter jurisdiction. The district court agreed with Placer Dome that removal was proper, holding that the Province's allegations invoked the act of state doctrine and thus triggered federal-question jurisdiction. The district court arguably cast a shadow upon that conclusion when it dismissed the case on *forum non conveniens* grounds. However, in its final order denying the Province's motion for reconsideration, the district court clarified that it had inadvertently placed its subject-matter jurisdiction in doubt and explicitly affirmed its previous conclusion that the complaint presented federal questions under the act of state doctrine. Whether viewed as an alternative holding or not, it is abundantly clear that the district court concluded it had subject-matter jurisdiction over this suit.[4]

**[1]** In *Sinochem*, the Supreme Court considered whether a district court must first conclusively establish its own jurisdic-

---

[4]Having actually reached the question of subject-matter jurisdiction, the district court skipped over, under *Sinochem*, only the issue of personal jurisdiction. To be sure, the district court halted discovery on *personal* jurisdiction—the only discovery permitted—following the issuance of *Sinochem*.

tion before dismissing a suit on the basis of *forum non conveniens*. Answering in the negative, the Court explained that, because jurisdiction is vital only if a court intends to render a determination on the merits of a case, "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.' " 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). And because a *forum non conveniens* dismissal is not a merits determination, the Court held that "[a] district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432. The court further observed:

> In the mine run of cases, jurisdiction "will involve no arduous inquiry" and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum "should impel the federal court to dispose of [those] issue[s] first." *Ruhrgas*, 526 U.S. at 587-88. But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.

*Id.* at 436 (alterations in original).

[2] In *Sinochem,* the Supreme Court offered the lower courts a practical mechanism for resolving a case that would ultimately be dismissed. For a case originally filed in federal court, the result would be the same, whether dismissed on jurisdictional or *forum non conveniens* grounds—dismissal would be inevitable and conclusive. For a case originating in state court, however, the difference could be significant. If the federal court dismisses on *forum non conveniens* grounds, the case is dismissed. But if removal is improper, the case is remanded to the state court. Thus, in a removal scenario, the

sequencing of the decision may have practical consequences.[5] In sum, *Sinochem* presents no bar to our reaching the issue of whether the Province's allegations invoke federal questions. Here, of course, the district court made a threshold determination that it had federal-question jurisdiction under the act of state doctrine, and it is to this question we now turn.

## III.    The Act of State Doctrine

Ultimately, the question of subject-matter jurisdiction here is not particularly complex. Although the Province's complaint is lengthy, we should not duck the jurisdictional analysis simply because we need to read and benchmark the allegations and claims against the act of state doctrine, a principle that is well established.

[3] Although there is no general federal common law, there are enclaves of federal judge-made law. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426 (1964). One such enclave concerns the law of international relations and foreign affairs. *Id.* at 427. A long-standing common law principle, the act of state doctrine precludes courts from evaluating the validity of actions that a foreign government has taken within its own borders. *See W.S. Kirkpatrick*, 493 U.S. at 409; *Sabbatino*, 376 U.S. at 401; *Underhill v. Hernandez*, 168 U.S. 250, 252 (1897); *see also Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 605-07 (9th Cir. 1976) (recounting history of the doctrine); Born and Rutledge, *International Civil Litigation in United States Courts* 751-55 (2007) (same). The doctrine reflects the concern that the judiciary, by questioning the validity of sovereign acts taken by foreign states, may interfere with the executive branch's conduct of foreign policy. *W.S. Kirkpatrick*, 493 U.S. at 404.[6] As a result, the

---

[5]*Sinochem* did not contemplate the issue of removal, perhaps because the suit under consideration was originally filed in federal court. *See id.* at 427.

[6]The Supreme Court in *W.S. Kirkpatrick* recognized that "the jurisprudential foundation for the act of state doctrine has undergone some evolu-

doctrine requires that the "official act of a foreign sovereign performed within its own territory" becomes " 'a rule of decision for the courts of this country.' " *Id.* at 405 (quoting *Ricaud v. American Metal Co.*, 246 U.S. 304, 310 (1918)).

**[4]** "[E]ven though the validity of the act of a foreign sovereign within its own territory is called into question, the policies underlying the act of state doctrine may not justify its application." *Id.* at 409 (citing *Sabbatino*, 376 U.S. at 428). The Supreme Court discussed three such policies in *Sabbatino*:

> [1][T]he greater the degree of codification or consensus concerning a particular area of international law, the more appropriate it is for the judiciary to render decisions regarding it . . . . [2][T]he less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches. [3]The balance of relevant considerations may also be shifted if the government which perpetrated the challenged act of state is no longer in existence.

*Sabbatino*, 376 U.S. at 428; *see also W.S. Kirkpatrick*, 493 U.S. at 409.

**[5]** The Supreme Court's leading contemporary act of state decision—*W.S. Kirkpatrick*—encapsulated the doctrine in this way: "Act of state issues only arise when a court *must decide* —that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine." *Id.* at 406.

---

tion over the years[,]" and explained that the doctrine "is not some vague doctrine of abstention but a '*principle of decision* binding on federal and state courts alike.' " 493 U.S. at 404, 406 (quoting *Sabbatino*, 376 U.S. at 427).

We followed this approach to the doctrine in *Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001), in which we considered a complaint brought by Latin American banana workers who asserted state law claims against multinational fruit and chemical companies alleging exposure to toxic chemicals. Because "nothing in plaintiffs' complaint turns on the validity or invalidity of any act of a foreign state[,]" we rejected application of the act of state doctrine. *Id.* at 800.

The defendants in *Patrickson* argued that, despite there being no act of state issues on the surface of the banana workers' complaint, "the case concerns a vital sector of the economies of foreign countries and so has implications for our nation's relations with those countries." *Id.* We did not embrace that argument, parting ways with other circuits that had more broadly interpreted the doctrine as supplying federal-question jurisdiction over any case that might affect foreign relations regardless of whether federal law is raised in the complaint. *Sabbatino* did not create an exception to the well-pleaded complaint rule. *Id.* at 801-02. "What Congress has not done is to extend federal-question jurisdiction to all suits where the federal common law of foreign relations might arise as an issue. We interpret congressional silence outside these specific grants of jurisdiction as an endorsement of the well-pleaded complaint rule." *Id.* at 803.

With *W.S. Kirkpatrick* and *Patrickson* lighting our way, we reach the heart of the matter.

## IV.   The Province's Complaint Does Not Implicate the Act of State Doctrine

The Province's complaint weaves together numerous allegations in a chronicle of skullduggery, toxic dumping, a collapsed dam that polluted the surrounding areas, a river flooded with poisonous mine tailings, and a corrupt government that facilitated this conduct. In sum, the Province alleges that Placer significantly harmed Marinduque and its people,

including through the contamination and degradation of the environment, which in turn caused blood diseases, skin disorders, and stomach ailments among the islanders. And since Placer Dome left Marinduque in 1997, it has done nothing, according to the Province, to ameliorate the problems it created, and has actively evaded responsibility.

These allegations are the backdrop for thirteen causes of action under Philippine law: (1) violating the public trust; (2) reckless imprudence, in violation of the Philippine penal code; (3) simple imprudence, in violation of the Philippine penal code; (4) violations of the Philippine water code; (5) violations of a Philippine fisheries law; (6) and (7) violations of Philippine pollution control laws; (8) violations of a Philippine mining law; (9) quasi-delict (negligence); (10) quasi-delict (public and/or private nuisance); (11) and (12) breaches of contract; and (13) promissory estoppel. The Province claimed environmental, economic, and human health damages; the cost of medical monitoring and care; and the cost of environmental remediation. It prayed for injunctive relief as well as damages.

In removing this suit to federal court, Placer Dome asserted that the complaint tendered questions of international law and foreign relations that furnished the district court with federal-question jurisdiction. The district court agreed, concluding that "Plaintiff's Complaint is replete with allegations regarding the Philippine Government's activities, which contributed to the environmental harm that Plaintiff has suffered." In particular, the district court identified five allegations that, in its view, invoked the act of state doctrine: (1) President Marcos overturned a presidential proclamation to allow mining in a forest reserve; (2) Marcos, and subsequent to his removal, a presidential commission, owned 49 percent of the shares in Marcopper, a subsidiary of Placer Dome; (3) Marcos ordered a government commission to issue a permit allowing Marcopper to dump toxic tailings into Calancan Bay; (4) Marcos ordered the same pollution commission to remove restraints

it had placed on Marcopper's dumping of waste into the bay; and (5) President Aquino ordered a pollution control board not to enforce a cease and desist order against Marcopper. Citing these same allegations, Placer Dome argues that the act of state doctrine bars this suit because the complaint is premised upon conduct that occurred pursuant to governmental permits and other acts or omissions by the Philippine government.

**[6]** Fatal to the district court's removal jurisdiction, however, is that the act of state doctrine is implicated here only defensively and the complaint does not "necessarily raise a stated federal issue, actually disputed and substantial." *Grable*, 545 U.S. at 314. As previously explained, "[t]o bring a case within the federal-question removal statute, a right or immunity created by the Constitution or laws of the United States must be an element,[7] and an essential one, of the plaintiff's cause of action." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted; alteration omitted). That is, "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* (internal quotation marks omitted). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Id.* (holding removal to federal court may not be predicated upon the defense that

---

[7]Therefore, "[a]lthough the act of state doctrine generally serves as a defense, it can also be used affirmatively as the basis of a claim." *Patrickson*, 251 F.3d at 800 n.2; *see also* Restatement (Third) of Foreign Relations Law § 443 cmt. i (1986) (noting that an act of state may be "necessary to a litigant's claim or defense"); *Republic of Philippines v. Marcos*, 806 F.2d 344, 354 (2d Cir. 1986) ("We hold that federal jurisdiction is present in any event because the claim raises, as a necessary element, the question whether to honor the request of a foreign government that the American courts enforce the foreign government's directives to freeze property in the United States subject to future process in the foreign state.").

a claim is precluded by a prior federal judgment). Alternatively, the complaint must raise a "federal issue[ ] embedded in state-law claims" that meets the test set forth in *Grable*. 45 U.S. at 314

**[7]** Here, none of the supposed acts of state identified by the district court is essential to the Province's claims. Nor do the other allegations in the complaint invoke an act of state as an essential element of any claim. Nor does the complaint "necessarily raise a stated federal issue, actually disputed and substantial." *Id.* To be sure, the complaint is sprinkled with references to the Philippine government, Philippine law, and the government's complicity in the claimed damage to the Marinduquenos. But the exercise of federal-question removal jurisdiction requires more—it requires the assertion of a federal question on the face of the Province's properly pleaded complaint or a disputed, substantial federal issue that does not disturb any congressionally-approved balances of state or federal judicial responsibilities. Just as raising the specter of political issues cannot sustain dismissal under the political question doctrine, neither does a general invocation of international law or foreign relations mean that an act of state is an essential element of a claim. *Cf. W.S. Kirkpatrick*, 493 U.S. at 409 (holding that federal courts ordinarily have the obligation to exercise their jurisdiction and "[t]he act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments"); *Sabbatino*, 376 U.S. at 423 ("[I]t cannot of course be thought that 'every case or controversy which touches foreign relations lies beyond judicial cognizance.' " (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)); *Alperin v. Vatican Bank*, 410 F.3d 532, 537 (9th Cir. 2005) (observing the justiciability inquiry under the political question doctrine is not applicable to every political case, but is limited to political questions).

**[8]** Specifically, to prove that Placer Dome violated the various provisions of Philippine law that the Province sued under, such as reckless and simple imprudence, the Province

need not prove the validity or invalidity of an act of state. For example, proving that Placer Dome was reckless when it hastily built the Maguila-Guila dam, which allegedly collapsed only two years after being built, does not implicate, let alone require, any act of state. Rather, invocation of the act of state doctrine here would be via Placer Dome's defense to the Province's claims and as such cannot support removal jurisdiction. Nor has the Province "artfully pleaded" its claims to defeat removal by omitting necessary federal questions.[8]

A review of the district court's grounds for finding jurisdiction nicely illustrates the difference between alleging that governmental action led to the defendant's challenged conduct and determining whether that governmental action is a central element of the claim or its validity is actually disputed by the parties. Thus, for example, the claims that former President Marcos opened a forest reserve to mining or owned a high percentage of stock in the mining company or eased pollution restrictions are not elements of the Province's claim that pollution and dumping occurred, that Placer Dome violated Philippine mining, fishing, water and pollution law, or that it breached a contract with the Province. At best, the allegations regarding the Philippine government's involvement in

---

[8]In *Rivet v. Regions Bank of Louisiana*, the Supreme Court explained:

> Allied as an "independent corollary" to the well-pleaded complaint rule is the further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions. If a court concludes that a plaintiff has "artfully pleaded" claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. Although federal preemption is ordinarily a defense, once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.

522 U.S. at 475 (internal citations, some quotation marks, and alteration omitted).

Placer Dome's endeavors, if true, may serve as a defense to the Province's claims, and the validity of these governmental actions is not actually disputed. *See Rivet*, 522 U.S. at 475.

**[9]** Our conclusion that the complaint does not require an application of the act of state doctrine is buttressed by the observation that some of the key considerations motivating the act of state doctrine carry little weight here. Consideration of how Marcos's corrupt actions facilitated environmental irresponsibility in pursuit of profit is not an inquiry likely to impact current foreign relations, and "the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches." *Sabbatino*, 376 U.S. at 428. Additionally, criticism of the actions of former Philippine regimes is less treacherous than reviewing the current government's actions, as "[t]he balance of relevant consideration may also be shifted if the government which perpetrated the challenged act of state is no longer in existence . . . for the political interest of the country may, as a result, be measurably altered." *Id.* Finally, as the Province points out, the Philippine government itself has openly condemned the conduct of its past president. *See also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1360-61 (9th Cir. 1988) (*en banc*) ("*A fortiori*, when a ruler's former domain has turned against him and seeks the recovery of what it claims he has stolen, the classification [of Marcos's past acts as 'acts of state'] has little or no applicability."). Most important, the parties' dispute as framed by the complaint does not require us to pass on the validity of the Philippines' governmental actions.

In sum, our review of the complaint does not sustain Placer Dome's claim that the act of state doctrine is in play. Nothing in the complaint would require a court to pass judgment on any official act of the Philippine government. *See W.S. Kirkpatrick*, 493 U.S. at 405.

## Conclusion

**[10]** The Province's complaint does not present a federal question based upon the act of state doctrine. The district court therefore lacked subject-matter jurisdiction over this suit and removal from state court was improper. We reverse, vacate the *forum non conveniens* dismissal, and remand with instructions to remand to the state court.

## REVERSED AND REMANDED.